746 P.2d 929

### In re the MARRIAGE OF Philip Scott THORLIN, Petitioner-Appellant,

#### and

### Heidrun Thorlin, Respondent-Appellee.

#### No. 1 CA–CIV 9056.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 10, 1987.

Review Denied Jan. 5, 1988.

solution of his marriage with appellee Heidrun Thorlin (Wife). The amended judgment awarded Wife a 42.9% interest in Husband's military retirement pension, retroactive to the date of Husband's retirement from the United States Army. We affirm.

## FACTS AND PROCEDURAL HISTORY

Viewed in the light most favorable to upholding the trial court's order, the facts are as follows. Husband entered the United States Army on June 5, 1963, and retired on June 30, 1983, after 20 years of service. Husband and Wife were married on February 5, 1965, and four children were born as issue of the marriage.

On June 26, 1981, the United States Supreme Court filed its opinion in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that federal law precluded state courts from dividing military retirement benefits under state community property laws. Husband and Wife separated in October of 1981, and on October 16, 1981, Husband filed a petition for dissolution of the marriage.

Wife retained counsel in connection with the petition for dissolution. During the proceedings, her lawyer advised her that because of the holding in *McCarty*, she would not be able to obtain an interest in any of Husband's military retirement benefits. Wife testified that during those proceedings, her lawyer did not give her any impression that there might be a later change in the law that would entitle her to share in Husband's retirement benefits and did not discuss any proposed federal legislation with her. She also testified that she became aware from news reports that congressional legislation to change the rule established in *McCarty* was being considered.

On April 9, 1982, Husband and Wife entered into a property settlement agreement. Paragraph 2 of the agreement divided "[a]ll property, both real and personal, that HUSBAND and WIFE now have, whether acquired prior to or subsequent to

Engler, Engler, Weil & Nelson by Richard D. Engler, John A. Weil, Yuma, for petitioner-appellant.

Westover, Choules & Shadle, P.C. by Allen James Clark, Yuma, for respondent-appellee.

## OPINION

BROOKS, Judge.

Philip Scott Thorlin (Husband) appeals from an order modifying the decree of dis-

the marriage of the parties, and whether community or otherwise...." In subparagraph (B)(2), Husband was awarded "[a]ll retirement benefits or other serviceman or employee benefits accruing or due the HUSBAND arising from his military service." In paragraph 4, Husband agreed to pay Wife child support in the amount of $800 per month, to be reduced by $100 per month as each child attained 18 years of age, and to terminate altogether when the last child reached the age of 18 years. In paragraph 5, Husband agreed to assume and pay all of the parties' joint, community, and common debts and obligations existing on the date the petition for dissolution was filed. Paragraph 12 of the agreement specified that neither Husband nor Wife would receive spousal maintenance. The agreement contained nothing that expressly governed the effect of future changes in the law on any of its provisions. In paragraph 9, the parties agreed that the terms of the property settlement agreement would be incorporated by reference in the decree of dissolution.

Wife testified that she signed the agreement based on her attorney's advice that she was not entitled to share in any of Husband's military retirement benefits. Both Wife and her attorney testified that they did not recall discussing whether a provision should be included that would entitle Wife to seek a portion of the retirement benefits if the *McCarty* rule were changed by appropriate federal legislation. Wife's attorney further testified that at the time the agreement was signed, he was not aware of any proposed legislation to alter the effect of *McCarty* and did not consider such legislation in advising Wife.

On April 12, 1982, a decree dissolving the marriage was entered. The decree determined that the property settlement agreement "fairly and equitably divides and makes disposition of joint, common and community property and debts and ... is reasonable as to support, custody and visitation of children." The decree ratified and approved the agreement and incorporated it by reference.

In February of 1983, Wife again consulted her lawyer because she had heard and read of a recent change in federal law relating to military retirement benefits. On March 7, 1983, Wife filed a motion for modification of the decree of dissolution pursuant to Rule 60(c), Arizona Rules of Civil Procedure. She alleged that she had relinquished any claim to Husband's military retirement benefits only because of the *McCarty* decision and that modification of the decree would be appropriate given the recent enactment of the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408.[1] Husband twice moved to dismiss the motion for modification. The trial court denied both motions.

The formal order denying the second motion stated in pertinent part:

It was this court's conclusion on May 31, 1983 and is again now that because the respondent has been given the express right to return to this court to take advantage of the federal legislation to resolve disposition of the military retirement pay, that decision can only be made after consideration of the disposition made of all the other community property of the parties. The property settlement agreement, in other words, has to be weighed anew pursuant to [Arizona Revised Statutes] sec 25–317B and C and in light of its omission of the community's interest in the military retirement payments.

1. 10 U.S.C. § 1408(c) (effective February 1, 1983) provides in part:
(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member [of the Armed Services] for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

(2) Notwithstanding any other provision of law, this section does not create any right, title, or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse.
(3) This section does not authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section.

After delays totaling in excess of two years occasioned by discovery proceedings and various postponements, the court heard the motion for modification of the decree of dissolution. After post-trial memoranda were received, the trial court entered an order incorporating its findings of fact and conclusions of law and modifying the decree of dissolution. The order determined that Husband's entitlement to military retirement payments earned during the marriage, exclusive of his military disability benefits, was community property and amounted to 85.8% of the total of those payments. The order determined that Wife was entitled to half the community's interest in Husband's military retirement payments, or 42.9%.

The order also awarded Wife 42.9% of the military retirement payments Husband had received from his retirement through the end of the month preceding entry of the order, less an amount equal to half the community debts the entirety of which Husband had assumed and paid under the original decree of dissolution. The order provided that the net amount of $6,468 owing from Husband to Wife could be satisfied through execution of a promissory note with certain specified provisions. Husband was directed to execute an irrevocable allotment to Wife of her 42.9% share of Husband's future military retirement payments and to pay Wife's share to her directly until the allotment became effective.

In effect, the order modified the decree of dissolution to divide the community debts equally between Husband and Wife and to award Wife a 42.9% interest in Husband's military retirement benefits retroactive to the date of Husband's retirement from the army. Husband timely appealed to this court.

## LEGAL ANALYSIS

Husband first argues that the "change in circumstances" represented by the enactment of the Uniformed Services Former Spouses Protection Act (hereinafter referred to as "the Act"), 10 U.S.C. § 1408, did not constitute a proper ground for post-judgment relief under Rule 60(c). Citing numerous decisions from Arizona and other jurisdictions, Husband further contends that it is well established that a division of property effected under a property settlement agreement cannot be modified after the agreement has been approved and accepted by the court absent proof that it was entered into under fraud or duress.

We need not unduly lengthen this opinion with a case-by-case analysis of these arguments, for our supreme court's recent decision in *Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984), is dispositive. Like the instant case, *Edsall* concerned a decree of dissolution that was founded on a property settlement agreement entered into after the United States Supreme Court's decision in *McCarty*, but before the enactment of 10 U.S.C. § 1408.

Consistent with *McCarty*, the agreement in *Edsall* provided that Ruth Edsall was not entitled to any of the military retirement benefits that her husband, Philip, was eventually to receive from the United States Government. About three months after the effective date of the Act, Ruth sought an order setting the decree aside and determining that she had an interest in Philip's retirement benefits. The trial court ruled that the decree would be reopened and the entire disposition of assets, including retirement benefits, would be reconsidered. In a special action brought by Philip, Division 2 of this court held that the principle of *res judicata* precluded reopening the decree of dissolution and that, in any event, the parties had intended to assign to Philip all of his military benefits regardless of any later changes in the law.

On petition for review, our supreme court vacated the opinion of the court of appeals. It concluded, contrary to the arguments of Philip, and of Husband in the instant case, that the trial court has the power to set aside a divorce decree based upon a negotiated separation agreement finalized after *McCarty* but before the enactment of 10 U.S.C. § 1408. The court noted that under § 1408(c)(1), individual states were once again permitted to determine under state law whether military re-

tirement income may be divided upon dissolution of a marriage. The court stated:

> Pursuant to the Act, we will again treat military retirement pay as community property to the extent that it was derived from community efforts. *See Van Loan v. Van Loan,* [116 Ariz. 272, 569 P.2d 214 (1977)]. This treatment will be retroactive to the date of *McCarty.*

143 Ariz. at 242, 693 P.2d at 897. Like Husband here, Philip argued that the court's application of the Act to Arizona community property law should not encompass decrees of dissolution that became final between *McCarty* and the effective date of the Act. In response, the court stated:

> We believe ... that there is authority in Arizona that will allow a final divorce decree to be reopened in the limited circumstances presented by this case notwithstanding *res judicata* principles.
>
> A.R.S. § 25–327(A) expressly allows property dispositions to be revoked or modified where the court "finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Rule 60, Arizona Rules of Civil Procedure states the conditions which entitle one to relief from judgments or orders. Specifically, Rule 60(c) provides the vehicle in which the trial court "may relieve a party or his legal representative from a final judgment, order or proceeding" if "it is no longer equitable that the judgment should have prospective application, or (6) any other reason justifying relief from the operation of the judgment." Arizona Rules of Civil Procedure. Rule 60(c)(5) and (6). Rules 60(c)(5) and/or (6) have been used liberally in reopening otherwise final court orders where there has been a change in the law affecting substantial rights of a litigant. [Citations omitted.]

&ast; &ast; &ast; &ast; &ast; &ast;

The Court in *DeGryse v. DeGryse,* 135 Ariz. 335, 661 P.2d 185 (1983) discussed A.R.S. § 25–327 A and Rule 60(c) and provides authority for the trial court to set aside a divorce decree. While finding no circumstances in that particular case

to reopen the decree of dissolution, the Court in *DeGryse* recognized that the Act returned the law to its pre-*McCarty* state under *Van Loan v. Van Loan, supra* and *Neal v. Neal,* [116 Ariz. 590, 570 P.2d 758 (1977)] with respect to the division of military retirement benefits upon divorce. The Court noted the need for finality in marriage and family law but stated that the Act constituted "express authorization" for setting aside divorce decrees entered in the *McCarty* interim period. 135 Ariz. at 338, 661 P.2d at 188. Although this language is dicta, its statement, the strong statement of intent by Congress in enacting the Act, and equitable considerations discussed *infra,* constitute "extraordinary circumstances" justifying relief from the judgment.

Congress made it clear that in passing the Act, their intent was to wipe out the effects of *McCarty* on persons divorced in the interim period.

> "The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable [sic]. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision."

1982 U.S.Code Cong. & Ad.News 1555, 1611.

Additionally, we believe that it is not equitable to deny the non-working military spouse the right to share in the fruits that his/her community labor has brought to the community. Congress in its research of the problem discovered that the military spouse often has more responsibility for the child care and management of the family household and often times gives up the opportunity to pursue an individual career.

143 Ariz. 243–44, 693 P.2d 898–99. The court concluded:

Because of the intent of Congress and the equities discussed above, we believe that the trial court had the power to reopen a final divorce decree where the parties relied on *McCarty* in disposing of military retirement benefits.

*Id.* at 246, 693 P.2d at 901. The court went on to hold, however, that under the particular language of the property settlement agreement that Philip and Ruth entered into, Ruth had affirmatively waived all rights in Philip's military retirement benefits that she might have obtained as a result of future congressional legislation. We will discuss that portion of the *Edsall* opinion in more detail below.

In summary, *Edsall* makes it abundantly clear that Rule 60(c)(5) and (6) and A.R.S. § 25–327(A) specifically permit the modification of a decree of dissolution that was founded on a negotiated separation agreement finalized after *McCarty* but before the effective date of 10 U.S.C. § 1408. Proof of fraud or duress, while it might give rise to independent grounds for vacating such a decree pursuant to Rule 60(c)(3), is not a requirement in such a case. *See also Lawwill v. Lawwill,* 21 Ariz.App. 75, 515 P.2d 900 (1973).

 Husband nevertheless argues that A.R.S. § 25–317(F), which was neither discussed nor cited in *Edsall,* absolutely

prohibits the modification of a decree of dissolution based on a property settlement agreement that the trial court originally determined not to be unfair as to disposition of property.[2] In a related vein, he argues that A.R.S. § 25–327(A), on which the *Edsall* court relied, authorizes only the modification of property dispositions in decrees of dissolution that were not based on property settlement agreements. He contends that the *Edsall* analysis is inapplicable here because the *Edsall* court "completely overlooked" the fact that the decree at issue in that case was based on a property settlement agreement.

We reject both of these arguments. Even if Husband's interpretation of A.R.S. § 25–317(F) were correct, *Edsall* has definitively held that post-*McCarty* decrees of dissolution founded on property settlement agreements may be modified in accordance with the retroactivity provision of 10 U.S.C. § 1408 pursuant to A.R.S. § 25–327(A) and Rule 60(c), Arizona Rules of Civil Procedure. This court may not disregard a clear holding of our supreme court on the purported ground that the analysis supporting it is incorrect or incomplete. No such dilemma confronts us, however, because we find A.R.S. § 25–317(F), viewed in conjunction with other statutory provisions concerning property settlement agreements, to be fully consistent with our supreme court's analysis in *Edsall.*

Arizona Revised Statutes § 25–317(A) permits the parties to a marital dissolution action to enter into a written separation agreement covering property disposition, spousal maintenance, and support, custody, and visitation of their children. Under subsection B of 25–317, the provisions of a separation agreement, other than those for support, custody, and visitation of children, bind the trial court unless it finds that the separation agreement is unfair. Subsection D provides that if the court finds that the separation agreement is not unfair as to disposition of property or spousal main-

---

**2.** Arizona Revised Statutes § 25–317(F) provides:

Except for terms concerning the maintenance of either party and the support, custody or visitation of children, entry of the decree

shall thereafter preclude the modification of the terms of the decree and the property settlement agreement, if any, set forth or incorporated by reference therein.

tenance, and is reasonable as to support, custody, and visitation, the agreement is to be set forth or incorporated by reference in the decree of dissolution and the parties are to be ordered to perform its provisions. Under subsection E, enforcement of the terms of such an agreement may be had through any remedy available for enforcing a judgment, including contempt. Subsection F then provides that, except for terms concerning maintenance and the support, custody, or visitation of children, entry of the decree precludes its modification.

Husband maintains that § 25–327(A) applies to all decrees of dissolution, but notes that it is specifically made inapplicable where § 25–317(F) applies; that § 25–317(A) evidences a legislative policy to encourage settlement agreements in marital disputes; and that § 25–317 focuses specifically on such agreements. Husband argues that the literal terms of § 25–317(F), prohibiting post-decree modifications, must therefore be read to supersede the more general provisions of § 25–327(A) as applied to decrees of dissolution founded on property settlement agreements. As Husband argues,

> since the general terms [of] A.R.S. § 25–327 apply to all decrees, there would have been no need to enact A.R.S. § 25–317(F) except that the legislature intended to create a specific, more restrictive rule in the case of decrees incorporating settlement agreements.

Although this contention may have persuasive force on the surface, Arizona law does not sustain it. First, though § 25–327(A) specifically excepts § 25–317(F), it does so only in its first sentence, which exclusively concerns provisions that affect spousal maintenance or child support. The second sentence of subsection A, which governs revocation or modification of provisions for property disposition, makes no reference to § 25–317(F) and can be viewed as standing alone. In addition, § 25–317(F) has never been cited by an Arizona court for the proposition that a decree of dissolution based on a court-approved property settlement agreement is absolutely and forever insulated from modification even if grounds for relief

under Rule 60(c) can be established. Indeed, one of the cases on which Husband relies supports the opposite view. In *Wine v. Wine*, 14 Ariz.App. 103, 480 P.2d 1020 (1971), the court stated that a divorce decree into which a property settlement agreement has been incorporated "cannot be modified, *except in cases where alteration of judgments is generally provided for by law* ... such as fraud." *Id.* at 105, 480 P.2d at 1022 (Citations omitted) (emphasis added); *accord Lawwill v. Lawwill*, 21 Ariz.App. 75, 515 P.2d 900 (1973). Additionally, in *Acquanetta v. Ross*, 152 Ariz. 383, 732 P.2d 1121 (Ariz.App.1986), Division 2 of this court considered §§ 25–317(F) and 25–327(A) together and concluded that a property settlement agreement incorporated into a decree of dissolution may be modified by motion pursuant to § 25–327(A). *Id.* We thus conclude that our supreme court's holding in *Edsall* is not inconsistent with A.R.S. § 25–317(F).

With limited citation of authority, Husband next argues that 10 U.S.C. § 1408 violates principles of due process guaranteed by the 14th amendment to the United States Constitution, if it is retroactively applied so as to impair his vested rights arising from his property settlement agreement.

To the extent that Husband seeks to have our supreme court revisit its decision in *Edsall* on constitutional grounds, his argument would more appropriately be presented to that court. We note, however, that similar due process arguments have been considered and rejected in a number of decisions. *See, e.g., In re the Marriage of Giroux*, 41 Wash.App. 315, 704 P.2d 160 (1985); *In re the Marriage of MacDonald*, 104 Wash.2d 745, 709 P.2d 1196 (1985); *Mueller v. Walker*, 167 Cal. App.3d 600, 213 Cal.Rptr. 442 (1985). We further observe that both due process and equal protection considerations also weigh in favor of Wife. As stated by our supreme court in *Edsall*, not to apply the act retroactively:

> would be to carve out a category of people whose cases happened to be decided between June 25, 1981 and September

8, 1982 and deprive them of substantial property interests which all other similarly situated litigants have been awarded.

143 Ariz. at 245, 693 P.2d at 900 (quoting *Smith v. Smith,* 458 A.2d 711, 714–15 (Del. Fam.Ct.1983).

We lastly address Husband's argument that *Edsall* supports his position in this case because, as in *Edsall,* the Thorlin property settlement agreement made it clear that Husband was to continue to receive all of his military retirement benefits regardless of any future changes in the law. Again we disagree. In *Edsall,* paragraph 12 of the property settlement awarded to the wife:

> [a]ll benefits incident to or in connection with PHIL'S service in the military which RUTH may hereinafter become entitled to as a result of future or pending legislation by the Congress or any other legislative body, except that RUTH shall not have any right to any portion of PHIL'S military retirement income, the entirety of which PHIL shall receive as his sole and separate property pursuant to the terms of Exhibit B herein.

*Id.* 143 Ariz. at 246, 693 P.2d at 901. Paragraph 5 of Exhibit B awarded the husband "[a]ll rights to PHIL'S military retirement income." A prior draft of paragraph 5 had awarded him "[a]ll PHIL'S sole and separate military retirement income." *Id.* The *Edsall* court stated:

> The word "except" ties the disposition of military retirement benefits in the latter part of paragraph 12 to the first part of paragraph 12 which disposes of all other military benefits. Since the first part of paragraph 12 dealing with "[a]ll benefits incident to or in connection with PHIL'S service in the military" disposes of benefits arising from pending or future legislation, the exception dealing with retirement benefits also disposes of benefits arising from future or pending legislation.

*Id.* at 246–47, 693 P.2d at 901–02. The court also noted that the amending of paragraph 5 bolstered its interpretation of paragraph 12.

Unlike the situation in *Edsall,* the property settlement agreement in this case contains no provision by which either party assumed the risk of any "future or pending legislation by the Congress or any other legislative body...." Husband relies instead on the following provisions:

1. Paragraph 2(B)(2), which awarded Husband all military retirement benefits "accruing or due" to him.

2. The preamble to paragraph 2, which announced the division of all the parties' property, "whether community or otherwise...."

3. Subparagraph B of paragraph 2, which awarded the military retirement benefits to Husband "as his sole and separate property...."

4. Paragraph 6, which provided that property received by either party under the agreement would be that party's sole and separate property, free and clear of any right, interest or claim of the other party, and that each party would have the right to deal with and dispose of such property "as fully and effectively as if the parties had never been married."

5. Paragraph 8, entitled *"AGREEMENT FINAL AND COMPLETE."*

6. Paragraph 14, which purported to empower the court to modify or change child custody despite anything to the contrary in A.R.S. § 25–332.

Unlike Husband, we do not divine from any of these provisions the existence of any express or implied agreement between Husband and Wife that Wife was waiving any claim that she might acquire in the future as a result of a legislative change. Paragraph 2(B) of the property settlement agreement can more reasonably be viewed as merely recognizing the requirement of A.R.S. § 25–318(A) that both the separate and community property of a couple must be divided in connection with the dissolution of their marriage. Neither paragraph 6 nor 8 would operate to foreclose modifications of the agreement based on future legislative changes. Finally, the purpose of paragraph 14 is obviously to attempt to

negate the specific restriction in A.R.S. § 25–332 on subsequent modification of child custody provisions. It does not impliedly prohibit the modification of other provisions of the agreement.

We also reject Husband's alternative contention that Wife's awareness of possible legislation to overrule *McCarty* rendered her signature on the property settlement agreement a waiver of any possible claim to Husband's military retirement benefits after any future change in federal law. As Husband's counsel implicitly acknowledged during the testimony of Wife's counsel in the trial court, the property settlement agreement negotiated by the parties made no specific provision for the effect of future legislation, and as we have held *supra*, the agreement contained no reasonably identifiable expression of intent that Wife relinquish any possible claim based on a future change in the applicable federal law. Under those circumstances, Wife's asserted awareness of *potential* legislative changes in the *McCarty* rule when she signed the property settlement agreement would support the view that Husband and Wife never actually agreed that Wife would forego any future claim.

Because of our disposition of the issues discussed above, we need not consider Wife's contention that, upon the enactment of 10 U.S.C. § 1408, Husband's military retirement benefits became property held by the parties as tenants in common pursuant to paragraph 10 of the property settlement agreement.

Wife has requested an award of attorney's fees on appeal pursuant to A.R.S. § 25–324, and the request is granted. Wife may establish the amount of her award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed.

KLEINSCHMIDT, P.J., and SHELLEY, J., concur.