774 P.2d 226

**Virginia E. KELLY, now by marriage, Virginia E. Gurland, Petitioner/Appellant/Cross–Appellee,**

v.

**Stephen KELLY, Respondent/Appellee/Cross–Appellant.**

No. 2 CA–CV 88–0239.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 9, 1989.

Review Denied June 20, 1989.

Lieberthal & Kashman, P.C. by Howard A. Kashman, Tucson, for petitioner/appellant/cross-appellee.

Richard E. Frederick, Tucson, for respondent/appellee/cross-appellant.

OPINION

FERNANDEZ, Judge.

The issues raised in this appeal and cross-appeal involve a former spouse's right to share in military retirement benefits and application of the doctrine of laches to preclude the recovery of past benefits.

Stephen Kelly was married to Virginia Kelly, now Gurland, for 16 of the 20 years he was on active duty in the Air Force. He retired in February 1974 and began receiving military retirement benefits. In December 1977, Kelly, acting pro se, filed a petition for dissolution of marriage which did not mention his military retirement benefits. Both parties then negotiated a marital settlement agreement through an attorney, whose fee apparently was paid by Gurland. The agreement was approved by the court and incorporated into the decree entered in February 1978. Neither the agreement nor the decree mentions the retirement benefits.

On October 16, 1987, Gurland filed a motion to modify the decree by having the court divide the military pension. She also sought her share of the pension received by Kelly since February 10, 1978, the date the decree was entered. After a hearing, a judgment was entered on April 6, 1988, which awarded Gurland 40% of the military retirement benefits received after October 16, 1987. The court found that Gurland was precluded by laches from recovering any of the retirement benefits received prior to the date her petition was filed. Gurland appeals from the ruling on laches, and Kelly cross-appeals from the court's finding that Gurland has a community interest in his retirement benefits.

COMMUNITY INTEREST IN
MILITARY RETIREMENT
BENEFITS

We must first decide the cross-appeal issue of whether the court erred in concluding that Gurland has a community interest in Kelly's military retirement benefits. In 1977, the Arizona Supreme Court ruled for the first time that military retirement benefits attributable to community effort are community property. *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977). Thereafter, the United States Supreme Court held to the contrary on the ground that the consequence of characterizing mili-

tary retirement benefits as community property injured the objectives of the federal laws which created the military retirement program and, thus, that the federal laws preempt state laws on community property division. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

Congress responded to *McCarty* by enacting the Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, 96 Stat. 730, Title X (1982), codified in part at 10 U.S.C. § 1408 (effective February 1, 1983), which provides that military retirement benefits are subject to state community property laws retroactive to the date of the *McCarty* decision, June 26, 1981.

Our supreme court in *DeGryse v. DeGryse*, 135 Ariz. 335, 661 P.2d 185 (1983), recognized that the act returned the law in Arizona to its pre-*McCarty* state under *Van Loan* with respect to the division of military retirement benefits upon divorce. Accord, *Edsall v. Superior Court*, 143 Ariz. 240, 693 P.2d 895 (1984). The principle was recognized even though the court in *DeGryse* found that no circumstances existed to warrant reopening the decree of dissolution in that case.

Kelly asserts that both *In re Marriage of Thorlin*, 155 Ariz. 357, 746 P.2d 929 (App.1987), and *Edsall* stand for the proposition that a divorce decree entered between the *McCarty* decision and the effective date of the act can be reopened but that no authority permits the act to be applied to final decrees entered before June 1981. We agree. The supreme court in *Edsall* clearly indicated that the federal statute does not extend to pre-*McCarty* decrees. "Pursuant to the Act, we will again treat military retirement pay as community property to the extent that it was derived from community efforts.... This treatment will be retroactive to the date of *McCarty*." 143 Ariz. at 242, 693 P.2d at 897. We have found no case which has subsequently divided military retirement benefits when the final decree was entered between the date of *Van Loan* and the date of *McCarty*.

Our conclusion is consistent with the legislative intent expressed by Congress with regard to the act on more than one occasion.

The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable [sic]. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.

S.Rep. No. 502, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad. News 1596, 1611. Congress' most recent statement on the subject reads as follows:

Some misunderstanding may exist regarding the legislative intent of the Congress on one aspect of the Uniformed Services Former Spouses' Protection Act (USFSPA), title X of Public Law 97–252. Some state courts are apparently reopening divorce cases decided before the *McCarty* vs. *McCarty* decision of June 26, 1981, and are dividing military retirement pay because *the original divorce decree was silent on this subject.*

Although the Congress can not preclude state courts from reopening the pre-*McCarty* cases, Congress did not intend this to happen. As a result, the Uniformed Services Former Spouses' Protection Act specifically restricted the

direct payment mechanism to unmodified pre-*McCarty* decisions. The accompanying statement of managers further states, 'the courts should not favorably consider applications based on the enactment of this title to reopen cases finalized before the *McCarty* decision wherein military retired pay was not divided.' H.R.Rep. No. 563, 100th Cong., 2d Sess., 256 (1988) (emphasis added).

Gurland argues that this case is different from *Thorlin,* supra, and *Edsall,* supra, because the final decree here did not distribute the benefits with the result that the community interest was held by the parties as tenants in common pursuant to A.R.S. § 25–318(B) subsequent to entry of the decree. Although that may have been the case, we find that any rights Gurland had to have the benefits distributed terminated when *McCarty* was decided. Those rights were not revived when Congress enacted the Former Spouses' Protection Act because of the stated legislative intent that it does not authorize the reopening of cases precisely like this one in which the decree is silent on the subject.

This conclusion also acknowledges the appropriate public policies involved. In *Reed v. Reed,* 124 Ariz. 384, 604 P.2d 648 (App.1979), we held that *Van Loan* would not be applied to decrees which had been entered before *Van Loan* was decided. In doing so, we noted, "There is a compelling policy interest favoring the finality of property settlements.... This policy interest would be greatly undermined if the court were to create the potential for reexamination of every military divorce prior to *Everson*[1] and *Van Loan.*" 124 Ariz. at 385, 604 P.2d at 649. There is a strong public policy that decrees remain final and that litigation come to an end so that the parties may get on with their lives and conduct their financial and personal affairs accordingly.

This policy is especially applicable in dissolution cases and is exemplified in the facts of this case. Gurland remarried the day after the final decree was entered in February 1978. Kelly remarried in 1980. Both parties pursued their new lives and acted in accordance with the final decree for a number of years before Gurland filed this petition in October 1987. At the time of the decree, Kelly did not conceal the military pension or take any affirmative acts to deprive Gurland of her share of the benefits. Gurland was married to Kelly during most of his years in the Air Force and for four years after he retired and began receiving benefits. She was certainly aware of the retirement benefits and yet took no action to obtain her share of them for over 9½ years. Public policy requires that the final decree remain final.

We hold that the trial court erroneously found that Gurland has a community interest in Kelly's retirement benefits. Because of that conclusion, we need not address the issue of laches which was raised in the appeal.

The judgment is reversed.

LACAGNINA, C.J., and LIVERMORE, J., concur.

---

1. *Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975).