NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TICHINA SHEPHARD, *Appellant.*

No. 1 CA-CR 19-0271

FILED 5-28-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-005699-002

The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

_____

**G A S S**, Judge:

¶1            Tichina Shephard appeals her convictions and sentences for a total of 11 counts, including two counts for first-degree felony murder. For the following reasons, this court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶2            This court reviews the facts in the light most favorable to sustaining the jury's verdicts, resolving all reasonable inferences against Shephard. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015). This court does not weigh the evidence or assess witness credibility, because those are jury functions. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004); *State v. Salman*, 182 Ariz. 359, 361 (App. 1994).

¶3            In 2016, Shepard and Montez Wright, then a married couple, moved from Michigan to Arizona. Wright began working for a landscaping company. While working at the landscaping company, Wright met Andrew Lauro, another employee at the company. Wright told Lauro he was having financial problems and was worried about becoming homeless. Wright and Lauro developed a plan to burglarize a house in the retirement community where their employer had them doing landscaping work.

¶4            On Sunday, the day before the burglary, Wright and Shephard met with Lauro and finalized a plan to commit the burglary. The plan was to drive around on Monday morning until they selected a house with an open garage door. According to their plan, Wright and Lauro would enter the house, and Wright would hold the victims at gunpoint while Lauro tied them up. Shephard was to drive the getaway car.

¶5            Later in the day, Shephard created a "Stripe" account. Stripe accounts can be used for companies to move money around to different bank accounts. The Stripe account, purportedly for a wig business, was

registered using Shephard's phone, and was linked to her email address. The Stripe account was subsequently linked to two bank accounts, one belonging to Shephard and one belonging to Wright.

¶6		On Monday morning, consistent with their plan, the three went to Sun City. Though Lauro's testimony was often inconsistent, he said the three discussed the plan in the car on the way to the retirement community. Wright told Lauro he had a gun, which he purchased from Craigslist. Lauro understood he was to use duct tape to restrain the victims in the house. Shephard understood she was to move the car up the street and pick up Wright and Lauro when they came out of the house.

¶7		They identified a house with an open garage door. Wright and Lauro got out of the car, put on their work vests, and approached the open garage door. While Wright and Lauro did this, Shephard slid over to the driver's seat. The homeowner, A.D., saw the three park near his house. A.D. watched Wright and Lauro put on their work vests and approach his open garage door. A.D. closed his garage door and called the police.

¶8		Wright and Lauro quickly returned to the car and drove away. Within minutes, they came across another open garage door at B.L.'s house a few blocks away. Wright and Lauro entered B.L.'s house through the open garage while Shephard stayed in the car. Once inside, they found B.L.'s friend, R.S., reading a newspaper. Wright told R.S. "it's a stick up." Wright then shot her. Hearing the disturbance, B.L. came out of a bedroom, and Wright also shot her. Wright then shot R.S. a second time as she was about to use her cell phone. Both victims died.

¶9		Even though the plan was for Shephard to drive them away once they left the house, Wright and Lauro stole the victims' purses and fled in B.L.'s SUV. Cell phone records show Wright called Shephard at about the time of the burglary. Wright drove to a nearby church, where they joined up with Shephard, who was waiting in the parking lot.

¶10		While in the church parking lot, Wright realized he dropped his cell phone at B.L.'s house, so he returned to B.L.'s house in B.L.'s SUV to retrieve it but was unable to do so. In the meantime, Shephard and Lauro went back to Avondale in Wright's car and divided the cash in the two purses. Shephard kept the victims' credit cards and identification.

¶11		The three met up again when Wright returned to Avondale, where he subsequently abandoned B.L.'s SUV. The three then went to PIR Raceway, where they disposed of the gun Wright used to shoot the victims and burned the purses and some clothing they used in the

robbery. Before they left PIR Raceway, Shephard disposed of additional bullets still in Wright's car. Once they returned to Avondale, Lauro went his own way.

¶12        Wright and Shephard then made several transactions using B.L. and R.S.'s credit cards with a Stripe account Shephard created the day before the murders. The next day, the police went to B.L.'s house to perform a welfare check and discovered the victims. The police found Wright's cell phone at B.L.'s house. The police used the cell phone records to find Lauro, who eventually led the police to Wright and Shephard.

¶13        Shephard faced 11 counts: two counts of first-degree felony murder,[1] one count of first-degree burglary, one count of theft of means of transportation, one count of attempted first-degree burglary, one count of fraudulent schemes and artifices, one count of attempted fraudulent schemes and artifices, one count of aggravated taking identity of another, one count of computer tampering, and two counts of theft of credit card. The State prosecuted Shephard for felony murder under a theory of accomplice liability based on her role in the burglary of B.L.'s house.

¶14        Lauro pled guilty to felony murder. [2] Wright and Shephard went to trial. Under the terms of his plea deal, Lauro testified against Wright and Shephard and received a life sentence with the possibility of parole on the murder. After a 12-day trial, the jury convicted Wright and Shephard as charged.

¶15        The superior court sentenced Shephard to serve the sentences for the two counts of first-degree felony murder, one count of first-degree burglary, one count of theft of means of transportation, and one count of attempted first-degree burglary (Counts 1-5) concurrently. The longest sentences in this group are the life in prison sentences with the possibility of parole after 25 years on the two counts of first-degree felony murder. The superior court gave Shephard 644 days of presentence incarceration credit.

---

[1] Wright was jointly prosecuted with Shephard. Wright was prosecuted for first-degree murder.

[2] Lauro entered a "free talk" agreement with the prosecution in which he agreed to testify against Wright and Shephard for a lesser sentence.

**¶16** The superior court sentenced Shephard to serve the sentences on the one count of fraudulent schemes and artifices, one count of attempted fraudulent schemes and artifices, one count of aggravated taking identity of another, one count of computer tampering, and two counts of theft of credit card concurrently, but consecutively to the sentences on Counts 1-5. The longest sentence in this group is ten years for the one count of fraudulent schemes and artifices.

**¶17** Shephard timely appealed. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and 13-4032.A.1.

## ANALYSIS

I. **The superior court did not commit fundamental error by instructing the jury Shepard could be convicted of first-degree felony murder if she was an accomplice to the underlying burglary.**

**¶18** The State charged Shephard with felony murder under subsection 13-1105.A.2, which allows such a charge where an individual:

> Acting either alone or with one or more other persons . . . commits or attempts to commit . . . burglary under § 13-1506, 13-1507 or 13-1508 . . . and, in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person cause the death of any person.

The State also charged Shephard with burglary as an accomplice under § 13-1508.A, which provides:

> A person commits burglary in the first degree if such person or an accomplice violates the provisions of either § 13-1506 or § 13-1507 and knowingly and knowingly possesses . . . a deadly weapon or dangerous instrument in the course of committing any theft or any felony.

Arizona law applies accomplice liability to any person who:

> 1. Solicits or commands another person to commit the offense; or

2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense.

3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13-301.

¶19       Based on the above, the superior court instructed the jury as follows:

The crime of first-degree felony murder requires proof that:

[1.] the defendant or an accomplice committed or attempted to commit burglary in the first-degree; and

[2.] in the course of and in the furtherance of this crime or immediate flight from this crime, the defendant or another person cause the death of any person.

. . . .

Accomplice means a person who with the intent to promote or facilitate the commission of the offense does any of the following:

[1.] solicits or commands another person to commit the offense; or

[2.] aids, counsels, agrees to aid, or attempts to aid another person in planning or committing the offense; or

[3.] provides means or opportunity to another person to commit the offense.

A defendant is criminally accountable for the conduct of another if the defendant is an accomplice of such other person in the commission of the offense, including any offense that is a natural and probable or a reasonably foreseeable consequence of the offense for which the person was an accomplice.

¶20       At trial, Shephard did not challenge the jury instructions for accomplice liability or felony murder. This court's review, therefore, is limited to fundamental error. *See State v. Dickinson*, 233 Ariz. 527, 530, ¶ 10

(App. 2013). An improper instruction rarely justifies reversal of a criminal conviction when no objection was made at the superior court. *Id*. Under this limited review, Shephard has the burden to show (1) an error exists, (2) the error is fundamental, and (3) the error caused her prejudice. *See id.*

**¶21**     Shephard relies on *Evanchyk v. Stewart* to argue she cannot be guilty of felony murder as an accomplice unless she was also "a participant in the underlying felony." *See* 202 Ariz. 476, 480, ¶ 14 (2002). *Evanchyk*, however, was a response to certified questions from the United States District Court for the District of Arizona regarding conspiracy liability for felony murder. *See id.* at 478-79, ¶ 6.

**¶22**     Shephard is not the first to make this argument. This court rejected the identical argument in *State v. Rios*, 217 Ariz. 249 (App. 2007). In *Rios*, this court concluded the plain meaning of the felony murder statute did not impose an additional undefined requirement of participation in the underlying felony for a conviction of felony murder. *See id*. at 251-52, ¶¶ 10-11. *Rios* specifically held "the passage in *Evanchyk* . . . is dicta, and not controlling precedent." *Id.* at ¶ 11.

**¶23**     Shephard acknowledges this court in *Rios* already affirmed the above jury instructions based on first-degree felony murder on a theory of accomplice liability. Shephard does not attempt to distinguish *Rios*, but instead argues this court should reject the reasoning and holding in *Rios* because it incorrectly interprets Arizona's felony murder statute.

**¶24**     "Respect for precedent demands that we not lightly overrule precedent and we do so only for compelling reasons." *See State v. Hickman*, 205 Ariz. 192, 200, ¶ 37 (2003) (internal quotation omitted). Under the doctrine of *stare decisis*, this court will not reject precedent unless "the reasons of the prior decisions have ceased to exist or the prior decision was clearly erroneous or manifestly wrong." *White v. Bateman*, 89 Ariz. 110, 113 (1961). When a case involves a court's interpretation of a statute, the burden of proof is at its highest. *See Hickman*, 205 Ariz. at 201, ¶ 38.

**¶25**     *Rios* correctly interpreted Arizona's statutes for felony murder and accomplice liability. *See* A.R.S. §§ 13-1105.A.2, and 13-303.A.3. The reasoning underlying *Rios* continues to exist. *See Bateman*, 89 Ariz. at 113. Shephard does not establish *Rios* was clearly erroneous or manifestly wrong. *See id.* Though Shephard argues this court wrongly decided *Rios*, this argument is inadequate to overturn carefully reasoned precedent. *See State v. Paterson*, 222 Ariz. 574, 580, ¶ 19 (App. 2009).

**¶26** The superior court, therefore, did not fundamentally err in giving a jury instruction for felony murder based on accomplice liability because the *Rios* precedent supports the instructions.

**II. Shephard's convictions and sentences for felony murder under an accomplice liability theory do not violate the Arizona Constitution or the United States Constitution.**

**¶27** Shephard again did not raise this issue before the superior court. This court, therefore, reviews the challenge to Shephard's sentencing for fundamental error and Shephard must show (1) an error exists, (2) the error is fundamental, and (3) the error was prejudicial. *See Dickinson*, 233 Ariz. at 530, ¶ 10.

**A. Arizona's felony-murder statutes do not violate due process.**

**¶28** Arizona's felony murder statute satisfies due process because it "require[s] proof of the mental state required for commission of the relevant felony." *State v. McLoughlin*, 139 Ariz. 481, 485 (1984). Shephard asks this court either to distinguish longstanding, binding precedent or "suggest in a published opinion that *McLoughlin* be reconsidered." This court will not do so. *See City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378 (App. 1993) ("Whether prior decisions of the Arizona Supreme Court are to be disaffirmed is a question for that court."); *accord In re Marriage of Thorlin*, 155 Ariz. 357, 362 (App. 1987).

**¶29** Shephard also argues she is entitled to relief under Article 2, Section 4, of Arizona's Constitution even if she is not entitled to relief under the 5th and 14th Amendment Due Process Clauses of the United States Constitution. Longstanding precedent establishes the same standard applies to due process claims under the Arizona and Federal Constitutions. *See State v. Melendez*, 172 Ariz. 68, 71 (1992) ("The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness."). *See also State v. Quijada*, 246 Ariz. 356, 365, ¶ 27 (App. 2019); *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 7 (App. 2016), *as amended* (Apr. 15, 2016). Shephard has offered "no support for the proposition that the Arizona Constitution provides greater protection than the United States Constitution." *See Martin v. Reinstein*, 195 Ariz. 293, 316, ¶ 76 (App. 1999).

**¶30** Consistent with *McLoughlin*, the State was not constitutionally required to prove Shephard had the requisite *mens rea* to commit first-degree murder. *See* 139 Ariz. at 486. Instead, the State was

required to prove she had the *mens rea* to commit first degree burglary. *Id.; see also State v. Moore*, 218 Ariz. 534, 535, ¶ 8 (App. 2008) ("The *mens rea* requirement of felony murder . . . is supplied by the culpable mental state required for the underlying felony.") (internal quotation omitted). As discussed below, the State met this burden.

### B. Sufficient evidence establishes Shephard participated in burglary as the getaway driver knowing Wright intended to use a gun during the burglary.

**¶31** This court reviews sufficiency of the evidence claims *de novo*. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). This court will resolve "any conflicts in the evidence against the defendant" and views the facts in the light most favorable to supporting the verdict. *Id.* This court will only reverse the jury's decision if the verdict is not supported by substantial evidence. *State v. Tucker*, 231 Ariz. 125, 138, ¶ 27 (App. 2012). "Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *See Pena*, 235 Ariz. at 279, ¶ 5 (internal quotations omitted).

**¶32** Shephard first argues her two felony murder convictions and her first-degree burglary conviction are not supported by reasonable evidence. Specifically, Shephard claims there is insufficient evidence to show she was an accomplice to the first-degree burglary which caused the death of the two victims.

**¶33** Shephard relies on *State v. Johnson*, 215 Ariz. 28 (App. 2007). *Johnson*, however, is distinguishable. In *Johnson*, this court reversed a felony murder conviction because the defendant only intended to be a part of a burglary involving the entry into a fenced yard. *Id.* at 33, ¶¶ 19-20. No reasonable evidence supported a finding the defendant intended to be a part of a separate burglary involving entry into a house where the murder occurred. *Id.*

**¶34** Unlike the *Johnson* case, substantial evidence supports the jury's finding Shephard was an accomplice to the burglary ending in a double homicide. Shephard participated in the meeting with Wright and Lauro the day before the murders when they made a plan to commit a burglary. Shephard agreed to be the getaway driver. Later the same day, Shephard created the Stripe account, which she and Wright subsequently used to record transactions from the victims' bank accounts.

¶35        Shephard was with Wright and Lauro as Wright drove to the retirement community. On the drive, Wright and Lauro talked about using a gun and duct tape as part of the planned burglary while Shepard waited to serve as the getaway driver. After the first failed attempt to burglarize A.D.'s house, Shephard remained with Wright and Lauro as they drove to find a new home to burglarize and as they entered B.L.'s house. She drove the car away from the scene only after the shootings and after having telephone communication with one of her co-participants. She rejoined Wright and Lauro immediately after the burglary. She took Lauro back to Avondale while Wright tried to retrieve his cell phone from B.L.'s house. Then, she and Lauro rejoined Wright again. Consistent with her earlier participation, Shephard, Wright, and Lauro disposed of the gun and burned evidence related to the burglary and Shephard herself physically disposed of some unused bullets.

¶36        Throughout this appeal, Shephard argues she cannot be liable for the first-degree burglary charge because she did not know Wright or Lauro would ever possess and use a gun during the burglary. Shephard points to Lauro's testimony, which at times presents conflicting accounts of whether Shephard knew the gun was going to be used in the burglary. This court, however, will not reweigh the credibility of witness testimony. *See State v. Bronson*, 204 Ariz. 321, 328, ¶ 34 (App. 2003). As discussed above, the evidence presented, testimonial or otherwise, was substantial enough to support the jury's unanimous decision on counts 1-3. This court will not overturn on the basis other evidence may not have supported the convictions. Here, sufficient evidence in the record shows Shephard was a willing accomplice in the first-degree burglary.

¶37        Substantial evidence also supports Shephard's conviction for theft of means of transportation. To convict Shephard on this count, the jury had to find beyond a reasonable doubt Shephard "without lawful authority, knowingly controlled another person's means of transportation knowing or having reason to know that the property was stolen." The jury could find Shephard guilty under a theory of accomplice liability because, in relation to the burglary, stealing the vehicle was "a natural and probable or reasonably foreseeable consequence of the offense for which the person was an accomplice." A.R.S. § 13-303.A.3. Here, the jury found Shephard was an accomplice to the first-degree burglary and further found the theft of the vehicle was a reasonably foreseeable consequence of the burglary. Because substantial evidence supports this finding, this court will not reverse it.

### C. Shephard's sentences do not constitute cruel and unusual punishment.

¶38 Shephard argues her sentences are unconstitutional under Article 2, Section 15 of the Arizona Constitution and the Eighth Amendment to the United States Constitution. Arizona's Supreme Court consistently has interpreted both the same. *See State v. Davis*, 206 Ariz. 377, 380-81, ¶ 12 (2003). Under both, Shephard's sentences are constitutional unless they are "grossly disproportionate" to the crimes for which she was convicted. *See State v. Berger*, 212 Ariz. 473, 475, ¶ 10 (2006). This court must compare "the gravity of the offense and the harshness of the penalty." *Ewing v. California*, 538 U.S. 11, 22 (2003). "In comparing the gravity of the offense to the harshness of the penalty, courts must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Berger*, 212 Ariz. at 476, ¶ 13.

¶39 "The proper analysis focuses on the sentence imposed for each specific crime, not the cumulative sentence." *See State v. Kasic*, 228 Ariz. 228, 233, ¶ 25 (App. 2011) (internal quotation omitted). A sentence is not, therefore, disproportionately long "merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in the aggregate." *Berger*, 212 Ariz. at 479, ¶ 28.

¶40 Here, the superior court imposed the most lenient sentence available for the two first-degree felony murder counts, life with the possibility of parole after 25 years. Shephard cites no authority for the proposition such sentences violate constitutional restrictions. Indeed, the superior court could have imposed two consecutive life sentences but chose to impose concurrent life sentences. As for the consecutive sentences involving the financial and identity theft crimes, after the burglary involving two deaths, Shephard engaged in numerous acts to strip the victims of their assets, attempting to transfer more than $26,000 from them. The aggregate sentence for these crimes alone is ten years. Nothing in a ten-year concurrent sentence for six counts (a class 2 felony, three class 3 felonies, and two class 5 felonies) suggests an unconstitutionally lengthy sentence even if ordered consecutive to the life sentences.

¶41 Nothing in the record shows any fundamental error occurred during Shephard's sentencing. A jury of Shephard's peers found her guilty on all charges, including the felony murder and first-degree burglary charges, under a theory of accomplice liability. At the sentencing hearing the judge considered the totality of the information provided, including aggravating factors, and decided to sentence her to life with the

possibility of release instead of a sentence for her natural life. This sentencing for a felony murder conviction is not unconstitutional, and therefore does not constitute fundamental error.

**CONCLUSION**

¶42　　　　For the foregoing reasons, this court affirms Shephard's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:　AA