834 P.2d 148

**In re the Marriage of Audrey Marie FLYNN, Petitioner–Appellee,**

v.

**Burnace L. ROGERS, Jr., Respondent–Appellant.**

**No. CV–91–0125–PR.**

Supreme Court of Arizona,
En Banc.

July 16, 1992.

David H. Lieberthal, Tucson, for petitioner-appellee.

Curtis & Cunningham, Marjorie F. Cunningham, Tucson, for respondent-appellant.

## OPINION

LEVI RAY HAIRE, Judge, Court of Appeals (Retired).

We granted review of an opinion filed by Division 2 of the court of appeals in order to consider issues surrounding the disposition of military pension proceeds upon the reopening of a dissolution decree that became final in September of 1981.

At the time of the dissolution, the former husband was receiving a military retirement pension. Approximately three months before the dissolution decree was filed, the United States Supreme Court had issued its opinion in *McCarty v. McCarty,*

453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that federal law precluded state courts from dividing military retirement benefits in property dispositions resulting from marital dissolutions. The *McCarty* opinion overruled prior Arizona law holding that to the extent military retirement benefits had been earned by community effort, they were community property subject to division by the court upon dissolution. *See Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977); *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977). Because *McCarty* was the law at the time of the dissolution, both parties correctly believed that the pension benefits were the husband's sole and separate property. The dissolution decree contained no mention of pension benefits.

After the decree was filed, however, Congress passed the Uniformed Services Former Spouses' Protection Act (FSPA)[1], which again made military retirement benefits subject to state community property law. In essence, the Act legislatively overruled *McCarty.* Furthermore, in order to eliminate inequities that might otherwise have arisen in cases where state court decrees had been filed during the period between the issuance of the *McCarty* decision (June 26, 1981) and the effective date of the FSPA (February 1, 1983), the substantive provisions of the FSPA were made retroactive to the filing date of *McCarty.* The Act's retroactivity provisions effectively authorized state courts to reconsider dissolution decrees entered during the "window period" between June 26, 1981, and February 1, 1983, and to dispose of military retirement benefits in accordance with state law.

The decree of dissolution in this case was filed during that "window period," approximately three months after *McCarty* was filed and sixteen months before the FSPA became effective. However, the former wife did not seek to reopen the decree until August of 1989, approximately six and one-

half years later. In opposition to the wife's reopening request, the husband contended that: (1) the wife was not legally entitled to any share of the retirement benefits; (2) in any event, principles of finality and res judicata should preclude reopening of the dissolution decree; and (3) the wife's delay in asserting her rights constituted laches and should preclude any claim that she might once have had.

After an evidentiary hearing, the trial court rejected the husband's defenses and granted the wife's petition to reopen. The court awarded the wife a one-half share of the community's interest in the pension benefits, both prospectively from the date of the reopening request and retrospectively to the date of the original decree.[2] The amount of the retrospective award was $35,834.37. The wife's requests for interest and for attorney's fees pursuant to A.R.S. section 25–324 were denied.

On appeal to Division 2 of the court of appeals, the husband abandoned his claim that the wife was not entitled to a prospective share of the pension benefits. He contended only that the trial court had abused its discretion by not applying the doctrine of laches to defeat the wife's claim for retrospective benefits. The court of appeals agreed, stating:

> The facts of this case mandate the application of the doctrine of laches and the trial court abused its discretion in awarding appellee retirement pension received by the husband prior to the date of her petition and order to show cause requesting a division of the military retirement pension.

In prior decisions of this court, we have considered the problems created by the *McCarty* decision and the subsequent enactment of the FSPA with its retroactivity provisions. In *De Gryse v. De Gryse,* 135 Ariz. 335, 661 P.2d 185 (1983), a decree of dissolution awarding the wife a portion of the husband's military retirement pension had become final before the filing of

---

1. 10 U.S.C. § 1408.

2. In this opinion, the use of the terms "retroactive" or "retrospective" benefits in discussing decrees reopened pursuant to the FSPA, refers to benefits that have accrued between the filing of the original decree and the time the deprived spouse seeks reopening.

*McCarty.* The husband sought to reopen the final decree, urging that *McCarty* had overruled the state court decisions that had formed the basis for the award of benefits to the wife. The trial court denied relief to the husband, concluding that the effect of *McCarty* should be prospective only; it could not be used to upset judgments that had become final before its filing date.

When the husband appealed to this court, we noted that in view of the subsequent passage of the FSPA, the basic premise for his claim no longer existed. Accordingly, we refused to give *McCarty* retrospective application. *See also Rodriguez v. Rodriguez,* 133 Ariz. 88, 649 P.2d 291 (App.), *approved,* 133 Ariz. 87, 649 P.2d 290 (1981) (holding that *McCarty* did not alter the res judicata consequences of a divorce decree that had become final before *McCarty* was filed).

In *De Gryse,* we observed that the need for finality and stability in marriage and family law is great and that absent express authorization, such as the retroactivity clause contained in the FSPA, or a finding of "extraordinary circumstances," as contemplated by Rule 60(c)(6), Arizona Rules of Civil Procedure, a final decree should not be disturbed. We concluded that under the circumstances presented in *De Gryse,* the trial court acted within its discretion in denying the husband relief from the prior final decree.

*Edsall v. Superior Court,* 143 Ariz. 240, 693 P.2d 895 (1984), presented us with our first opportunity to consider an issue involving a decree that had become final during the period between the filing of *McCarty* and the effective date of the FSPA. The decree in *Edsall,* consistent with *McCarty* and the parties' separation agreement, provided that the wife was not entitled to any portion of the military retirement pension that the husband would eventually receive. Three months after the effective date of the FSPA, the wife filed a successful petition to reopen the divorce decree for the purpose of reconsidering her interest in the retirement benefits.

The husband sought special action relief from Division 2 of the court of appeals, which reversed the trial court's order, stating that res judicata precluded a reopening of the divorce decree, even though the decree had become final during the "window period" between the filing of *McCarty* and the effective date of the FSPA. The wife then filed a petition for review, which we granted in order to consider whether the court of appeals had erred in holding that res judicata principles precluded the reopening of such "window period" decrees. Upon thorough consideration of the FSPA's retroactivity provisions and the Act's obvious intent to nullify the effects that *McCarty* might have had on interim state court judgments, we concluded that principles of finality did not preclude the reopening of such "window period" decrees.[3]

Division 1 of the court of appeals subsequently followed and reemphasized the "window period" reopening principles that we set forth in *Edsall* in *Thorlin v. Thorlin,* 155 Ariz. 357, 746 P.2d 929 (App.1987). In *Thorlin,* the wife had moved for modification of the parties' "window period" decree slightly over one month after the effective date of the FSPA. After delays totalling more than two years, the trial court entered its order modifying the decree of dissolution so as to award the wife her one-half share of the community's interest in the husband's military retirement benefits, not only prospectively from the date of the order, but also retrospectively to the date the husband had begun receiving such benefits.

Our prior decisions have thus clearly established that a trial court may reopen and modify final decrees entered during the *McCarty* interim period in order to make proper disposition of military retirement benefits. However, we have not previously

**3.** In *Edsall,* the court of appeals, in an alternative holding separate and apart from its conclusions relating to principles of finality, determined that by the plain language of the parties' separation agreement, the wife had waived all her right to military retirement benefits that might accrue as a result of future legislation such as the FSPA. On that basis, we affirmed the court of appeals' determination that the *Edsall* decree should not be reopened.

considered any case in which one spouse has asserted an equitable defense, such as laches, in an attempt to defeat the other spouse's claim to a retrospective share of benefits.

In *Beltran v. Razo*, 163 Ariz. 505, 788 P.2d 1256 (App.1990), Division 2 of the court of appeals held that the defense of laches was not available to defeat a claim of the spouse to a *prospective* division of the community's interest in military pension benefits. Whether laches could preclude a spouse's right to a *retrospective* division of pension benefits was not an issue on appeal in *Beltran*, but the court stated in dicta:

> However, the equitable defense of laches is available to prevent unfairness to a spouse who may have spent the money in reliance on the judgment. In such instances, the court may deny complete retroactivity and then proceed to divide the funds from the date of the petition to divide.

163 Ariz. at 507, 788 P.2d at 1258.

■ Against this background, we now consider whether the court of appeals erred in reversing the trial court's award of retrospective benefits to the wife in this case. As a legal proposition, we agree with the court of appeals' conclusion in *Beltran* that upon the reopening of a "window period" dissolution decree, the court may consider the equitable defense of laches in reaching its determinations concerning an award of retrospective benefits. However, any consideration of the defense of laches must start from this initial premise: (a) the deprived spouse has the right to receive his or her proportionate share of *all* community-generated pension benefits; and (b) laches is an affirmative defense that must be asserted and proved by the opposing spouse before the deprived spouse may be divested of the right to recover a share of benefits previously paid.

■ We emphasize that laches may not be imputed to a party for mere delay in the assertion of a claim. Rather, the delay must be unreasonable under the circumstances, including the party's knowledge of his or her right, and it must be shown that any change in the circumstances caused by the delay has resulted in prejudice to the other party sufficient to justify denial of relief. As we stated in *Jerger v. Rubin*, 106 Ariz. 114, 117, 471 P.2d 726, 729 (1970):

> Laches, a form of estoppel, is a defense where, because of delay or by lapse of time, the party asserting the defense either is injured (by the mere lapse of time) or changes his position in reliance on the other party's inaction. Additionally, the delay must come after the party against whom the defense is asserted becomes aware of or has knowledge of, his right.

(Citations omitted.)

■ When the dissolution decree was entered in the present case, both parties had knowledge of the fact that the husband was receiving a military retirement pension. At that time, under *McCarty*, the wife had no legal right to share in the pension. Her right first came into existence on February 1, 1983, the effective date of the FSPA. However, the trial court specifically found that the wife "had no knowledge of any possible entitlement to a portion of the military retirement benefits until April, 1989 . . . ." The record shows that the wife first discovered her potential claim when she consulted a lawyer on another matter. She commenced this proceeding shortly thereafter, in August of 1989, after she had borrowed sufficient funds to hire counsel.

In reversing the trial court's decision to reject the husband's laches defense, the court of appeals apparently concluded that the wife's delay in this case was inexcusable as a matter of law. The court of appeals recognized that delay is excusable if the party asserting the claim has no knowledge of the *facts* upon which the claim might be based. *See Summit Properties, Inc. v. Wilson*, 26 Ariz.App. 550, 550 P.2d 104 (1976). The court then stated: "However, ignorance of the law or legal rights will not excuse a delay in suing."

Although we have found no Arizona authority directly supporting the principle that delay arising from lack of knowledge of legal rights is inexcusable, authority from other jurisdictions demonstrates that

the principle has general acceptance. *See, e.g., Marrero Morales v. Bull Steamship Co.,* 279 F.2d 299 (1st Cir.1960); *Morales v. Moore–McCormack Lines, Inc.,* 208 F.2d 218 (5th Cir.1953); 30A C.J.S. Equity § 150 (1992).

We find it difficult, however, to apply this concept to the peculiar circumstances of this case. In all the cases cited on this issue in the court of appeals' opinion, the "fact" that gave rise to the plaintiff's claim was the occurrence of events that could not conceivably escape the plaintiff's notice— i.e., the occurrence of physical injury to the plaintiff.

Here, by contrast, the wife did not learn of any such "fact" after the filing of the dissolution decree. Assuming that the "fact" giving rise to the wife's claim was the husband's receipt of pension benefits, the wife had knowledge of that fact before the decree was entered, at which time, under *McCarty,* she had no claim. On the other hand, if the inception of rights flowing from the enactment of the FSPA could possibly be considered a "fact," then laches should not defeat her claim because the trial court found, upon consideration of the evidence, that she had no knowledge of that "fact" until shortly before the commencement of this proceeding.

The trial court apparently concluded that the critical date to consider in determining whether the wife's delay was excusable was the date on which she first gained knowledge of her rights under the FSPA.[4] We conclude that the trial court did not err in doing so. In *Edsall,* we recognized the dilemma created by the *McCarty*–FSPA tandem and held that the resulting circumstances justified reopening the prior decree, notwithstanding principles of res judicata that would otherwise be applicable. Those same circumstances must be considered in determining whether the wife's delay in this case was excusable. The wife's prior knowledge of the "fact" of the husband's receipt of military pension benefits could not, and did not, give rise to a

claim on her part. Rather, her claim evolved from rights created by the passage of the FSPA, and the trial court found that she had no knowledge of those rights until shortly before she commenced this proceeding.

Accordingly, we hold that the court of appeals erred in concluding that the wife's ignorance of her legal rights could not excuse her delay in suing. To hold otherwise would mean that *any* delay on her part would have been inexcusable, as she had knowledge of the "fact" upon which her claim was based long before the claim came into existence.

The husband contends that in any event the wife was not diligent in ascertaining her right to share in the pension benefits after the passage of the FSPA. He points out that a friend of the wife mentioned to the wife on at least two occasions that she might have some right to the benefits. We have reviewed the transcript of the friend's testimony and find nothing that would require the trial court to find that the wife had not been diligent in that regard. The most that can be said is that at some unspecified time after the FSPA became effective, the wife's friend questioned her as to whether she had any rights under the Act. The wife had no reason to believe that she did. The friend did not have any specific idea, or even know whether the Act gave the wife any rights to a portion of the retirement benefits. She had not read any information concerning the Act. We find no abuse of discretion in the trial court's weighing of this evidence.

■ The court of appeals has indicated in this case as well as in its dicta in *Beltran* that "if the husband treated the asset as his separate property and disposed of it according to his needs, the doctrine of laches should be applied to prevent collection of the sums that have already been spent." *Flynn v. Rogers,* 168 Ariz. 269, 271, 812 P.2d 1087, 1089 (App.1991). We reject any suggestion that, as a matter of law, the receipt and expenditure of benefits for per-

---

4. The parties did not request that the trial court make findings of fact. Therefore, we must presume that the court found every fact necessary to uphold the judgment, if evidentiary support is found in the record. *Neal v. Neal,* 116 Ariz. 590, 570 P.2d 758 (1977).

sonal "living expenses" in reliance on a prior decree is sufficient in itself to constitute a prejudicial change in conditions when the deprived spouse has no knowledge that her rights have been invaded. We recognize, however, that such expenditure, when combined with other factors, may justify a finding by a trial court that a party's delay has been unfairly prejudicial to the other party. *See Casas v. Thompson,* 42 Cal.3d 131, 228 Cal.Rptr. 33, 720 P.2d 921 (1986); *Henn v. Henn,* 26 Cal.3d 323, 161 Cal.Rptr. 502, 605 P.2d 10 (1980); *Hill v. Hattrem,* 117 Cal.App.3d 569, 172 Cal.Rptr. 806 (1981).

The cited California cases recognize that the principles underlying laches and other equitable defenses should be applied, not only in determining the deprived spouse's right to an award of retroactive benefits, but also in determining the amount of recovery allowed and in structuring the manner of repayment. Here, the fact that the trial court weighed and considered the equities is evidenced by the court's refusal to allow interest on the amount awarded to the wife for retrospective benefits, as well as by its denial of the wife's request for attorneys fees. Since the husband did not suggest or request that the payment of the retrospective benefits be structured (such as payment in periodic installments), the trial court did not abuse its discretion in failing to do so.

In conclusion, we have reviewed the evidence presented to the trial court regarding whether the wife's long delay was excusable and whether the delay was sufficiently prejudicial to the husband to preclude a retrospective recovery of the pension benefits. The evidence presented conflicting factors that were relevant to the exercise of the trial court's discretion on these issues. A recital of these evidentiary details would unduly lengthen this opinion and would have little precedential value. After reviewing the record, we cannot say that the evidence presented by the husband would not have supported a different result if the trial court had exercised its discretion in his favor. More importantly, however, considering the evidence in a light most favorable to the wife, we cannot say that

the trial court abused its discretion in rejecting the husband's equitable defenses and in granting retrospective benefits to her.

The opinion of the court of appeals is vacated, and the judgment entered by the trial court is affirmed. Attorney's fees requested by the wife relating to her petition for review are granted in an amount to be established pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

FELDMAN, C.J., MOELLER, V.C.J., and CAMERON and CORCORAN, JJ., concur.

Note: The Honorable LEVI RAY HAIRE, a retired judge of the Arizona Court of Appeals, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to article 6, section 20, of the Arizona Constitution and A.R.S. section 38–813.