973 P.2d 1166

David HARRIS, Plaintiff/Appellant.

v.

Helen PURCELL, in her official capacity as Maricopa County Recorder; F. Ann Rodriguez, in her official capacity as Pima County Recorder; and Betsey Bayless, in her official capacity as Arizona Secretary of State, Defendants/Appellees,

and

Citizens Against Cockfighting, Real Party in Interest.

No. CV–98–0437–AP.

Supreme Court of Arizona, En Banc.

Dec. 17, 1998.

Michael J. Fuller, Phoenix, Attorney for Plaintiff/Appellant.

Grant Woods, Attorney General by M. Colleen Connor, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee Bayless.

Richard M. Romley, Maricopa County Attorney by Jill M. Kennedy, Deputy County Attorney, Phoenix, Attorneys for Defendant/Appellee Purcell.

Barbara E. LaWall, Pima County Attorney by Daniel Jurkowitz, Deputy County Attorney, Tucson, Attorneys for Defendant/Appellee Rodriguez.

Stephanie Nichols–Young, Phoenix, Attorney for Real Party in Interest.

## OPINION

JONES, Vice Chief Justice.

¶ 1   This action challenges the ballot certification of an initiative measure, Proposition 201, and comes on direct appeal from a Superior Court order granting dismissal of plaintiff's case.   The complaint sought: (1) to enjoin the Arizona Secretary of State from certifying or printing Proposition 201 on the official November 3, 1998[1] general election ballot;  (2) to enjoin the Secretary from printing and distributing the publicity pamphlet "1998 Ballot Propositions";  and (3) to set the matter for trial pursuant to A.R.S. § 19–121.03. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 19–121.03(B) and 19–122(C).

¶ 2   We agree with the trial court that plaintiff's claim is barred by the equitable doctrine of laches.[2]  Accordingly, we do not reach the merits of the controversy.  *See Mathieu v. Mahoney,* 174 Ariz. 456, 851 P.2d 81 (1993).  Our order of October 16 affirmed the trial court's dismissal and indicated that an opinion would follow.  We now announce that opinion.

### Facts and Procedural History

¶ 3   The parties are the plaintiff, David Harris, and the defendants, Maricopa County Recorder Helen Purcell, Pima County Recorder F. Ann Rodriguez, Arizona Secretary of State Betsey Bayless, and the Real Party in Interest, Citizens Against Cockfighting (Citizens).  The controversy involves the certification of Proposition 201, the "cockfighting initiative."  Plaintiff's challenge is that the initiative petitions were variously deficient as a matter of law, that mandatory certification procedures were not followed and that such failure resulted in the inclusion of signatures that were otherwise invalid.

¶ 4   Signatures supporting the initiative were filed with the Secretary of State on July 1, one day prior to the filing deadline for the November 3, 1998 general election.  In compliance with A.R.S. § 19–121.02, the Secretary of State selected, at random, five percent of the signatures filed with each petition and submitted same to the county recorders for verification of eligibility.

¶ 5   On July 31 and August 4, respectively, the Pima and Maricopa County Recorders issued Proposition 201 signature certifications to the Secretary of State as required by A.R.S. § 19–121.02. Pursuant to § 19–121.03, any challenge to the counties' certifications

---

1.  All calendar dates referenced in this opinion are from the year 1998.

2.  Laches is the equitable counterpart of a statute of limitations.  A claim is considered unenforceable in an action in equity where, under the totality of circumstances, the claim, by reason of delay in prosecution, would produce an unjust result.

had to be made within ten calender days after the final certification by the counties to the Secretary of State, or in this case, by August 14.

¶ 6 On August 12, the Secretary of State certified Proposition 201 for the November ballot pursuant to § 19–121.04. Under the statute, the Secretary determined that the minimum number of signatures required was 112,961, and that based on random sampling of approximately 181,000 signatures, 153,494 were valid. Valid signatures thus represented 136% of the required number, a total that easily exceeded the one hundred five percent minimum under § 19–121.04.

¶ 7 Although the plaintiff could not formally challenge county certification until August 4, when the county recorders certified the ballot measure, it was not necessary to wait until that date to begin reviewing signatures on petitions. Plaintiff was entitled to begin reviewing petition sheets, as public records, when Proposition 201 was initially filed with the Secretary of State on July 1. He nevertheless delayed the review process by not requesting the petitions until August 7, after random sampling by the Secretary and certification by the counties had taken place. Six days later, on August 13, copies of the petitions were made available to plaintiff by the Secretary of State's office. Plaintiff and other volunteers reviewed the petitions between August 14 and September 22.

¶ 8 Plaintiff filed an initial complaint in Superior Court on August 14, alleging the Maricopa and Pima County Recorders' offices did not certify the initiative petitions in accordance with A.R.S. § 19–121.02. This complaint was never served. Two weeks later, on September 1, plaintiff filed an amended complaint, naming the Secretary of State as an additional defendant and alleging violation of A.R.S. § 19–122(C), failure properly to follow certification procedures for the placement of Proposition 201 on the November ballot. In addition, plaintiff sought to obtain records from Citizens' notaries public,

but waited until September 1 to dispatch letters of request to the notaries.[3]

¶ 9 The amended complaint was not served until dates falling between September 4 and September 8,[4] some 23 days after the Secretary of State certified the Proposition, 31 days after the Secretary's receipt of county certifications, and more than two months after the Proposition was filed with the Secretary. The trial judge immediately offered plaintiff a trial date of September 10, but plaintiff's counsel requested a later date, stating he would not be prepared for trial at that time. Thus, on September 4, the court, in order to accommodate, set the trial date for September 22.

¶ 10 Prior to the scheduled trial date, plaintiff filed two motions to expedite discovery. The first, a motion to take depositions and motion for expedited ruling, was filed contemporaneously with the amended complaint on September 1. The motion requested access to Citizens' notary journals and permission to depose the notaries and other persons with information concerning the petition circulation process. Because the motion was made prior to service on defendants, the trial court denied it without prejudice to allow for refiling after service of process.

¶ 11 The second, essentially a motion for reconsideration, was made on September 11, and in a September 15 minute order, the trial court denied this request as well, finding that it "sorely lacked any good cause factual basis" and that it was filed without conferring with defendants' counsel in violation of Rule IV, Uniform Rules of Practice. The trial court expressly stated that plaintiff could refile his motion for discovery upon compliance with the rules. Plaintiff chose not to resubmit his motion and now claims that the trial court abused its discretion in denying the two discovery requests.

¶ 12 On September 21, the day before trial, plaintiff filed a new motion for order to produce, motion to continue, and motion for

---

3. These notaries were Treva Slote, Joan Mutcher, William Goethe, Karen Michael, Karen Harter, Susan Morris, Julie Trueba, April Biggs, J.T. Irvine, Kathy Ryden, and Claude Derrick Lee.

4. Plaintiff served his amended complaint on the Secretary of State and the Maricopa County Recorder on September 4, Citizens Against Cockfighting on September 5, and the Pima County Recorder on September 8, 1998.

expedited ruling. In response, Citizens made some of the requested notary records available for review.[5] Plaintiff nevertheless complains that he was not afforded adequate time to review these records. Although he contends further that Citizens delayed production of other notary journals, Citizens maintains that it cooperated with plaintiff by producing seven notary books before trial and arranging for photocopies of some of the requested documents the night before trial.

¶ 13 By the September 22 trial date, ballots containing Proposition 201 had been printed, and replacement ballots without the Proposition could not be printed in time for early voting.[6] In fact, early voting procedures for the November 3 election began October 1, when early ballots were distributed to the county recorders in compliance with A.R.S. § 16–545.[7]

¶ 14 On September 22, the trial judge granted, without prejudice, separate motions to dismiss by defendants Pima County Recorder and Citizens,[8] finding that the doctrine of laches applied because plaintiff had unreasonably delayed the prosecution of this matter to the prejudice of defendants and taxpayers.

## Discussion

■ ¶ 15 We have held, and it is well-settled in Arizona, that the doctrine of laches is available as a defense in an action challenging the legal sufficiency of an initiative measure and seeking to enjoin printing the measure on the official ballot. *Mathieu v. Mahoney*, 174 Ariz. 456, 458–59, 851 P.2d 81, 83–84 (1993) (citing A.R.S. § 19–122(C)); *Kromko v. Superior Court*, 168 Ariz. 51, 57, 811 P.2d 12, 18 (1991). *Kromko* stated, and *Mathieu* reaffirmed, "[a]n action to enjoin

placing an initiative or referendum proposal on the ballot is equitable in nature, and therefore may be subject to equitable defenses such as laches." *Mathieu*, 174 Ariz. at 459, 851 P.2d at 84. In election matters, time is of the essence because disputes concerning election and petition issues must be initiated and resolved, allowing time for the preparation and printing of absentee voting ballots. *Id.* (citing *Kromko*, 168 Ariz. at 57, 811 P.2d at 18). Delay and untimeliness may render an action moot. *Id.* Furthermore, as an initial matter, once initiative petitions are circulated, signed and filed, they are presumed valid. *Kromko*, 168 Ariz. at 58, 811 P.2d at 19.

■ ¶ 16 In *Mathieu*, we articulated and applied the most recent laches test to emphasize that delay alone in asserting an election law violation would not serve as the basis to apply the laches defense. *Mathieu*, 174 Ariz. at 459, 851 P.2d at 85 (citing *Flynn v. Rogers*, 172 Ariz. 62, 66, 834 P.2d 148, 152 (1992)). Rather, we examine the justification for delay, including the extent of plaintiff's advance knowledge of the basis for challenge. In so doing, we determine whether delay by the challenging party was unreasonable. *Id.* Moreover, even a finding of unreasonable delay is not enough; it must also be established that the delay resulted in actual prejudice to the adverse parties. *Id.*

¶ 17 In election cases, prejudice caused by a challenger's delay affects interests that reach beyond those of the defendants and the petition circulators. It also places an unreasonable burden on the court. *Id.* Specifically, "[t]o wait until the last moment [to challenge an election matter] places the court in a position of having to steamroll through the delicate legal issues in order to meet the

---

5. In his motion, plaintiff requested that Citizens' notaries public Claude Derrick Lee, J.T. Irvine, and Kathy Ryden produce their notary records for review. Citizens made available for inspection Mr. Lee's and Mr. Irvine's notary records.

6. Maricopa and Pima Counties began printing ballots containing Proposition 201 shortly after this Court heard oral argument on September 9 on two other ballot measures, Proposition 106 (Open Primary Elections Now) and Proposition 200 (Arizona Clean Elections Act).

7. Having affirmed the judgment of the trial court, we do not reach the mootness issue raised by these facts. *See Rapier v. Superior Court of Greenlee County*, 97 Ariz. 153, 156, 398 P.2d 112, 114 (1964).

8. The trial court did not rule specifically on all three motions filed by the Pima County Recorder, Maricopa County Recorder, and Secretary of State. In the order of dismissal, however, it is implicit that the judge intended to terminate the action as to all defendants.

deadline for measures to be placed on the ballot." *Id.* (quoting *State ex rel. Fidanque v. Paulus,* 297 Or. 711, 688 P.2d 1303 (1984)).

¶ 18   In this case, plaintiff filed the initial complaint August 14, the last day to challenge the counties' certification of Proposition 201 pursuant to A.R.S. § 19–121.03. While plaintiff met the ten-calender-day deadline to challenge certification, he failed to exercise diligence in preparing and advancing his case. Moreover, the initial complaint was never served. Importantly, plaintiff· did not request copies of signature petitions until August 7, nearly five weeks after Proposition 201 was filed with the Secretary of State. While plaintiff argues he was unreasonably delayed by the Secretary's six-day lag in providing petition copies for review (August 7 to August 13), this six-day period was inconsequential. Had plaintiff acted, he could have obtained them at least a month earlier. In addition to plaintiff's long delay before commencing actual review of the petitions and his failure to serve the initial complaint, he also failed to obtain timely service of the amended complaint. The amended complaint was filed September 1, yet service on one of the defendants was not made until September 8.

¶ 19   Moreover, the trial court found plaintiff's motions for discovery to be untimely and deficient, lacking a sound factual basis, and thus causing unnecessary delay in the adjudication of this matter. As defendants correctly argue, and the trial court explicitly recognized, the discovery sought by plaintiff had no valid purpose. Plaintiff never persuasively articulated a need for the multiple depositions requested.[9]

¶ 20   Importantly, to invalidate the signatures on any petition in the record before us, which is essentially what plaintiff sought, he needed only the petition sheets filed with the Secretary of State and the voter registration forms of signors, all of which are public records. Plaintiff's attempt to depose various notaries, and presumably discredit their record keeping, would not impact the validity of underlying verified signatures if those signatures were of registered voters. A.R.S. § 41–319. While the statute requires that notaries keep journals of their notarial acts, it does not support plaintiff's assertion that failure to keep complete records by the notaries who notarized circulators' signatures should result in disqualification of qualified electors' signatures. On the contrary, Arizona courts have demonstrated consistently a preference that initiatives be placed on the ballot if they comply substantially with constitutional and statutory rules regarding election procedures. *Kromko,* 168 Ariz. at 58, 811 P.2d at 19. In short, the trial court's denial of plaintiff's discovery motions did not prejudice the plaintiff. Where proposed discovery pursues a theory that is neither germane nor probative, denying it cannot be an abuse of discretion.

¶ 21   In addition to the foregoing delays, plaintiff's counsel resisted the trial date first proffered by the trial judge, stating he could not be prepared. The hearing, scheduled for September 22 instead of September 10, delayed resolution of this matter by an additional twelve days.

¶ 22   The trial court's dismissal of plaintiff's amended complaint was not a denial of due process. The record easily supports the trial court's judgment, and consequently, we find that dismissal of the action was not "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *GM Dev. Corp. v. Community Am. Mortgage Corp.,* 165 Ariz. 1, 9, 795 P.2d 827, 835 (App.1990)(quoting *Torres v. North Am. Van Lines, Inc.,* 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1982)).

¶ 23   As a final matter, plaintiff, citing *Kromko,* urges this Court to focus our laches analysis on the timeliness of filing the complaint rather than on plaintiff's lack of diligence in prosecuting his claim or the resulting prejudice to opposing parties. This argument is without merit. Despite the timely filing of the complaint, the doctrine of laches is appropriate on this record for all the reasons set forth.

9.  Plaintiff made no effort to demonstrate good cause pursuant to Ariz. R. Civ. P. 30(a)(2). Specifically, plaintiff failed to establish, in an affida-vit, the purpose for his discovery request. More importantly, plaintiff failed to demonstrate his theory of the case.

¶ 24 Fundamental fairness is the *sine qua non* of the laches doctrine. *Mathieu,* 174 Ariz. at 460, 851 P.2d at 85. In election disputes, we consider fairness not only to those challenging a ballot measure, but also to those devoting effort and funds to place a proposition on the ballot, and fairness to the thousands of citizens who signed petitions and collected the signatures. *Id.*

¶ 25 Accordingly, the trial court's judgment of dismissal is affirmed.

THOMAS A. ZLAKET, Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice, concur.

NOTE: Honorable Stanley G. Feldman, Justice, recused himself and did not participate in the determination of this matter.