SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| LEAGUE OF ARIZONA CITIES AND TOWNS, | ) Arizona Supreme Court |
| | ) No.  CV-08-0379-SA |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **O P I N I O N** |
| | ) |
| DEAN MARTIN, Arizona State | ) |
| Treasurer, in his official | ) |
| capacity and JANET NAPOLITANO, | ) |
| Governor of the State of Arizona, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**JURISDICTION ACCEPTED; RELIEF GRANTED**

_____

PERKINS, COIE, BROWN, & BAIN, P.A.                          Phoenix
     By   Paul F. Eckstein
          Charles A. Blanchard
          Steven J. Monde
          Aaron S. Welling
Attorneys for League of Arizona Cities and Towns

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
     By   Mary R. O'Grady, Solicitor General
          Christopher Munns, Assistant Attorney General
Attorneys for Dean Martin, State Treasurer

LEWIS AND ROCA, L.L.P.                                      Phoenix
     By   Robert G. Schaffer
          Kimberly A. Demarchi
          Emily S. Cates
          Stefan M. Palys
          Sarah E. Selzer
Attorneys for Janet A. Napolitano, Governor

_____

**B E R C H**, Vice Chief Justice

¶1      We have been asked to decide whether a statutory

measure requiring Arizona's incorporated cities and towns to

deposit money into the state general fund is an appropriation that may be included in the general appropriations bill. *See* Ariz. Const. art. 4, pt. 2, § 20. We hold that it is not such an appropriation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 26, 2008, the Arizona Legislature passed House Bill 2209 ("HB 2209"), which is the general appropriations act for the 2008-2009 fiscal year. 2008 Ariz. Sess. Laws, ch. 285 (2d Reg. Sess.). Section 47 of the bill requires the petitioning cities and towns to pay approximately eighteen million dollars into the state general fund during the current fiscal year:

> A. Notwithstanding any other law, in fiscal year 2008-2009, counties, incorporated cities and towns shall deposit $29,748,400 into the state general fund. The amount transferred to the state general fund by each county, incorporated city and town shall be calculated by the joint legislative budget committee staff, who shall publish the allocations by August 31, 2008. The joint legislative budget committee staff shall base its allocation on the distributions provided under section 28-6538, subsection A, paragraphs 2, 3, and 4, Arizona Revised Statutes.[1]

> B. Notwithstanding any other law, a county may meet any statutory funding requirements of this section from any source of county revenue designated by the county, including funds of any county wide special

---

[1] The allocations are based on the formula used to determine distributions from the Arizona Highway User Revenue Fund ("HURF") to the counties, incorporated cities, and towns. Under that formula, the cities and towns must deposit $18,329,822 into the general fund, while the counties are responsible for $11,418,578.

taxing district in which the board of supervisors serves as the board of directors.

C.    Contributions made pursuant to this section are excluded from the county expenditure limitations.

*Id.* § 47.  The Governor signed HB 2209 into law on June 27, 2008.  The legislature then promptly adjourned *sine die*.  Four days later, the 2008-2009 fiscal year began.  It ends on June 30, 2009.  *See* Ariz. Const. art. 9, § 4; Ariz. Rev. Stat. ("A.R.S.") § 35-102 (2000).

¶3      Two weeks after the passage of HB 2209, the League of Arizona Cities and Towns (the "League") contacted the Governor's Office to express concern over § 47's constitutionality.  The League and its counsel met with the Governor's staff at least four times between August and October 2008 to discuss the dispute over § 47.  When discussions failed to resolve the issue, the League filed a special action in this Court on November 14, approximately four and one-half months after HB 2209 was signed into law.[2]  The petition named as respondents the Governor of Arizona and the Arizona State Treasurer.[3]  Following

---

[2]    The League represents only the cities and towns.  The counties are not parties to this action and have not challenged the constitutionality of § 47.

[3]    The Treasurer agrees with the League that § 47 violates Article 4, Part 2, Section 20 of the Arizona Constitution. Since this lawsuit was briefed and argued, Janice K. Brewer has succeeded Janet Napolitano as Governor of Arizona.  The Court has received no filings by the Office of the Governor indicating a change in legal position.

oral argument, we issued an order accepting jurisdiction. This opinion explains our grant of relief.

## II. DISCUSSION

### A. Special Action Jurisdiction

¶4     Our decision to accept jurisdiction of a special action is highly discretionary. Ariz. R.P. Spec. Act. 3, State Bar Committee Note; *see also Forty-Seventh Legislature v. Napolitano*, 213 Ariz. 482, 485, ¶ 11, 143 P.3d 1023, 1026 (2006). Several factors support our exercise of jurisdiction in this matter. The case presents novel constitutional issues of statewide importance. *See Forty-Seventh Legislature*, 213 Ariz. at 485, ¶ 11, 143 P.3d at 1026; *Randolph v. Groscost*, 195 Ariz. 423, 425, ¶ 6, 989 P.2d 751, 753 (1999). In addition, "this case involves a dispute at the highest levels of state government" and requires a swift determination because it concerns the state budget for the current fiscal year. *Rios v. Symington*, 172 Ariz. 3, 5, 833 P.2d 20, 22 (1992); *see also State Comp. Fund v. Symington*, 174 Ariz. 188, 192, 848 P.2d 273, 277 (1993) (noting that "prompt resolution is needed [in cases affecting the state budget] so that the legislative and executive branches will know where they stand and can take such action as they determine necessary relative to budgetary matters").

¶5     The Governor urges us to decline jurisdiction because

- 4 -

of the League's delay in filing suit.  Although the Governor frames the issue as a jurisdictional challenge, we analyze it under our laches jurisprudence because it does not implicate our authority to decide the case; rather, it relates to our exercise of discretion whether to take the case.

**¶6**         "Laches will generally bar a claim when the delay [in filing suit] is unreasonable and results in prejudice to the opposing party."  *Sotomayor v. Burns*, 199 Ariz. 81, 83, ¶ 6, 13 P.3d 1198, 1200 (2000).  Delay alone will not establish a laches defense, however.  *Id.* at ¶ 8; *Harris v. Purcell*, 193 Ariz. 409, 412, ¶ 16, 973 P.2d 1166, 1169 (1998).  Rather, in determining whether the delay was unreasonable, "we examine the justification for delay, including the extent of plaintiff's advance knowledge of the basis for challenge."  *Harris*, 193 Ariz. at 412, ¶ 16, 973 P.2d at 1169.  The delay must also result in prejudice, either to the opposing party or to the administration of justice, *id.*, which may be demonstrated by showing injury or a change in position as a result of the delay.  *Flynn v. Rogers*, 172 Ariz. 62, 66, 834 P.2d 148, 152 (1992) (citing *Jerger v. Rubin*, 106 Ariz. 114, 117, 471 P.2d 726, 729 (1970)); *Tovrea v. Umphress*, 27 Ariz. App. 513, 521, 556 P.2d 814, 822 (1976); *see also Lubin v. Thomas*, 213 Ariz. 496, 497, ¶ 10, 144 P.3d 510, 511 (2006) (finding prejudice to system).

**¶7**         The Governor contends that by waiting to bring its

action until November, the League prevented prompt judicial resolution of the matter and exacerbated the already precarious budget situation. The League counters that the parties' ongoing negotiations justified the delay. It further maintains that no prejudice has occurred because substantial budget adjustments are still required before the end of the fiscal year to balance the State budget.

¶8        Section 47 requires the cities and towns to deposit roughly $18.3 million into the general fund by the end of the current fiscal year, which concludes on June 30, 2009. When the petition was filed, more than seven months remained before the League members' payments were due. Even now, nearly five months remain. Thus, while we recognize the complexities associated with balancing the budget during the course of the fiscal year, in this case, adequate time remains for the legislature to make adjustments. The time remaining before the payment deadline distinguishes this case from other cases in which we have found delays in filing suit unreasonable. Those cases often dealt with last-minute challenges to ballot propositions filed shortly before impending printing deadlines. *See, e.g.*, *Sotomayor*, 199 Ariz. at 83, ¶ 7, 13 P.3d at 1200 (holding unreasonable petitioners' failure to file a special action until the day before the voter information pamphlet printing deadline); *Mathieu v. Mahoney*, 174 Ariz. 456, 459, 851 P.2d 81, 84 (1993)

(finding unreasonable filing the complaint days before the absentee ballot printing deadline). Here, the League did not wait until an imminent deadline approached to file its special action.

¶9      But even had the delay been unreasonable, delay alone will not satisfy the test for laches. *Sotomayor*, 199 Ariz. at 83, ¶ 8, 13 P.3d at 1200. The complaining party must also prove prejudice. *Id.* In this case, the Governor has not demonstrated prejudice because she has not shown substantial harm caused by the League's delay. When § 47 was passed, the State's budget deficit was projected to be approximately $400 million. The anticipated deficit has steadily grown and is currently reported to be nearly $1.6 billion. JOINT LEGISLATIVE BUDGET COMM., JLBC – MONTHLY FISCAL HIGHLIGHTS: JANUARY 2009, at 1 (2009), http://www.azleg.gov/jlbc/mfh-jan-09.pdf. Section 47 requires the cities and towns to make a payment that represents only a small fraction of the current deficit.

¶10      The Governor suggests that measures might have been taken to find alternate sources of revenue to replace the amount at issue here had it been known that the League would challenge § 47. Yet she knew months before the special action was filed of the League's claim that § 47 is unconstitutional. Governor Napolitano did not exercise her constitutional authority to convene an extraordinary session of the legislature to address

this issue, *see* Ariz. Const. art. 5, § 4 (authorizing extraordinary session). Even after this action was filed, neither she nor the legislature requested a special session, *see id.* art. 4, pt. 2, § 1(2) (authorizing a special session upon petition of two-thirds of members of each house). If a special session was not called during that time to resolve a $1.6 billion deficit it seems unlikely one would have been called to find an alternate source for funding the $18.3 million payment at issue here. We therefore do not find that the delay in this case caused prejudice.

¶11    The availability of an alternative remedy also undermines the Governor's claim of prejudice. The cities and towns receive payments from the State through the Urban Revenue Sharing Fund (the "URSF"), A.R.S. § 43-206 (Supp. 2008). For the current fiscal year, the legislature appropriated $727,677,400 from the general fund to the URSF. *See* 2006 Ariz. Sess. Laws, ch. 351, § 14 (2d Reg. Sess.).[4] The Treasurer distributes monies from the URSF to the cities and towns in a proportional amount each month. A.R.S. § 43-206(C). At this time, the URSF contains several months' worth of appropriated

---

[4]    This appropriation was made in lieu of the transfer required by § 43-206(A). 2006 Ariz. Sess. Laws, ch. 351, § 14. Under the formula provided in § 43-206(A), the URSF would have contained $709,936,400 for the current fiscal year, $17,741,000 less than the amount the legislature appropriated. House Fact Sheet for S.B. 1160, 48th Leg., 2d Reg. Sess. (2008).

- 8 -

monies that have not yet been distributed. *See id.* The legislature could suspend, reduce, or eliminate part of the remaining payments to the incorporated cities and towns. If that were to happen, contrary to the Governor's prejudice claim, funds of other state entities would not be required to offset the expected $18.3 million deposit from the League's members.[5]

¶12　　　　The Governor urges us not to overlook the burden that the League's delay imposes on the state budget process. We agree that parties wishing to challenge the budget must do so in a timely manner and, in some circumstances, a four-month delay will be too long. *See Mathieu*, 174 Ariz. at 460, 851 P.2d at 85 ("Litigants and lawyers involved in [public] litigation must be keenly aware of the need to bring such cases with all deliberate speed or else the quality of judicial decision making is seriously compromised."). But we disagree with the Governor's conclusion that the League's delay was unreasonable or caused

---

[5]　　　The League argues that any reduction in the existing URSF appropriation of approximately $728 million would require a two-thirds vote of each house of the legislature because it would change the allocation of taxes among the state and cities. *See* Ariz. Const. art. 9, § 22(7). We need not decide that issue because Chapter 351 of the 2006 session laws appropriates monies from the general fund for fiscal year 2008-2009 in lieu of an amount equal to fifteen percent of net state income taxes for fiscal year 2006-2007. Thus, even if reducing the URSF appropriation *below* the formula-based amount might be subject to a supermajority vote, an issue we do not decide here, reducing the appropriation *to* that amount would not change the allocation of taxes among the State and cities for purposes of Article 9, Section 22.

prejudice under the circumstances of this case.

¶13     Laches is an equitable doctrine based on the principle of fundamental fairness.  *Harris*, 193 Ariz. at 414, ¶ 24, 973 P.2d at 1171.  When determining whether laches should preclude a claim, we consider all factors, including not only the length of the League's delay, but also the magnitude of the problem at issue.  Employing this approach leads us to conclude that the League's delay does not bar this action.

**B.   Is § 47 an Appropriation?**

¶14     The Arizona Constitution strictly limits the contents of general appropriations bills:  "The general appropriation bill shall embrace nothing but appropriations for the different departments of the State, for State institutions, for public schools, and for interest on the public debt.  All other appropriations shall be made by separate bills, each embracing but one subject."  Ariz. Const. art. 4, pt. 2, § 20.  Any legislation in a general appropriations bill that is neither an appropriation of money for a specific purpose nor a provision necessary for the proper expenditure of that money is improper. *State v. Angle*, 54 Ariz. 13, 21, 91 P.2d 705, 708 (1939).

¶15     We have set forth the standards for determining whether legislation is an "appropriation" on several occasions. In *Hunt v. Callaghan*, we defined an appropriation as "the setting aside from the public revenue of a certain sum of money

- 10 -

for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other." 32 Ariz. 235, 239, 257 P. 648, 649 (1927) (citations omitted). The essential parts of this definition are the "certain sum," the "specified object," and the "authority to spend." *Rios*, 172 Ariz. at 7, 833 P.2d at 24 (quoting *Black & White Taxicab Co. v. Standard Oil Co.*, 25 Ariz. 381, 406, 218 P. 139, 148 (1923) (Lockwood, J., dissenting)). The legislature may set aside money from the public revenue by "authoriz[ing] spending from the general fund or . . . authoriz[ing] payments of ascertainable amounts from a special fund." *Forty-Seventh Legislature*, 213 Ariz. at 487, ¶ 20, 143 P.3d at 1028. We have also determined that under certain circumstances the legislature may make an appropriation by transferring money from a previously appropriated sum back into the general fund. *See Rios*, 172 Ariz. at 9, 833 P.2d at 26.

¶16    In *Rios v. Symington*, we addressed whether fund transfers shifting money from special funds into the general fund constituted appropriations. *Id.* at 8-9, 833 P.2d at 25-26. In that case, we applied the three-part test for an appropriation to each special fund at issue and ruled that all were created by appropriations. *Id.* at 6-8, 833 P.2d at 23-25. We then held that fund transfers *reducing* the amount of a prior

- 11 -

appropriation also constituted appropriations.  *Id.* at 8, 833 P.2d at 25.  The reason was apparent:  "When the Legislature transfers monies from a previously-made appropriation, the obvious effect is to reduce the amount of the previous appropriation."  *Id.* at 9, 833 P.2d at 26.  *Rios* emphasized that before a transfer of funds from a special fund may be considered an appropriation, the special fund itself must meet the test for an appropriation.  *Id.* at 6, 9, 833 P.2d at 23, 26.  *Rios* thus obliges the legislature to identify some appropriation that must be reduced to make the payment demanded by § 47 if it wishes to include the transfer in the general appropriations bill.

¶17    While § 47 identifies an ascertainable sum to be paid, the question remains whether § 47 identifies and reduces something that meets the definition of an appropriation.  We conclude that it does not.  The legislature did not expressly attach the assessed amount to any public revenue that it had previously set aside for the cities and towns.  Because § 47 fails to identify any prior appropriation, it fails to meet the definition of an appropriation.

¶18    The Governor argues that the cities and towns received monies from the State far exceeding the $18.3 million at issue, and the Court should infer that these were the prior appropriations intended to be reduced by § 47.  The Governor first identifies $17.7 million of additional funding to the

Urban Revenue Sharing Fund as a specific appropriation for fiscal year 2008-2009 that § 47 could constitutionally reduce. *See supra* note 4. But the Governor admits that this extra funding does not cover the total $18.3 million requirement imposed on the cities and towns, leaving a portion of the § 47 payment obligation unattached to any prior appropriation. More importantly, § 47 does not identify the additional urban revenue sharing funding as an appropriation that the legislature designated for reduction. The Governor also points to various discretionary grants made for the benefit of the cities and towns as appropriations that § 47 might be deemed to reduce. Those funds, however, are often subject to restrictions, such as use or reimbursement limitations imposed by the federal government, and many are not appropriated to the cities and towns themselves, but to various executive agencies for use by the cities and towns. And again, those grants are not identified in § 47 as the prior appropriations now being reduced. Because § 47 does not reduce any identified prior appropriation, it violates Article 4, Part 2, Section 20, and is therefore unconstitutional.[6] *See Angle*, 54 Ariz. at 21, 91 P.2d

_____

[6] In its petition for special action, the League also argued that § 47 violates Article 9, Section 22 of the Arizona Constitution because it imposes a new tax, fee, or assessment without approval by a two-thirds vote of both houses of the legislature. Because we conclude that § 47 is unconstitutional under Article 4, Part 2, Section 20, we do not reach this issue.

at 708.

## C.  Attorneys' Fees

¶19      The League has requested an award of attorneys' fees pursuant to A.R.S. § 12-348(A) (2003).  That section requires an award of attorneys' fees "to any party *other than . . . a city, town or county* which prevails by an adjudication on the merits in . . . [a] special action proceeding brought by the party to challenge an action by the state against the party."  *Id.* (emphasis added).  Under the statute, the cities and towns are prohibited from recovering fees.  Accordingly, the League, which asserted standing in this matter as the representative of the cities and towns, cannot be awarded attorneys' fees under § 12-348(A).

## III.  CONCLUSION

¶20      For the foregoing reasons, we conclude that § 47 is not an appropriation and therefore was not properly included in the general appropriations bill.  It therefore violates Article 4, Part 2, Section 20 of the Arizona Constitution.  The League's request for attorneys' fees is denied.

_____

Rebecca White Berch, Vice Chief Justice

CONCURRING:

_____

Ruth V. McGregor, Chief Justice

- 14 -

_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice


**B A L E S**, Justice, Concurring

¶21    While joining in the Court's opinion, I write briefly to explain why I conclude this action is not barred by laches. The legislature has ample time within this fiscal year to remedy the identified constitutional problem and to achieve nearly the same budget reduction sought by § 47 without impacting recipients of appropriations other than the cities and towns.

¶22    As a general matter, I would be inclined to accept the Governor's argument that a party cannot wait several months to challenge the validity of an appropriations bill.  Delay in bringing such challenges obviously poses the risk of unduly prejudicing governmental entities that could be forced to absorb significant budget adjustments over the remaining fiscal year. These concerns, however, are not implicated here given the unique circumstances of this case.

¶23    The legislature, as the Court recognizes, *see* n. 6 *supra*, could achieve almost all the $18.3 million budget savings

- 15 -

intended by § 47 by instead rescinding $17.7 million from the existing $728 million appropriation to the Urban Revenue Sharing Fund (URSF). Because monies are distributed to cities and towns from the URSF on a monthly basis, there are hundreds of millions of dollars still remaining in the URSF for this fiscal year. The legislature could, by a majority vote of each house, reduce the outstanding appropriation by some $17.7 million, the difference between the amount the legislature appropriated in 2006 and the amount calculated by the statutory formula in A.R.S. § 43-206(A).

¶24      If the Legislature can achieve nearly the same result by reducing this year's urban revenue sharing appropriation to cities and towns, one might ask if our decision unduly elevates form over substance. This is an area, however, in which the form of legislation has constitutional significance. Section 47 does not identify *any* appropriation of state funds from which the cities and towns are to provide the mandated deposit of money. This fact readily distinguishes § 47 from lump sum reductions that can be linked to identifiable appropriations to departments or subunits of the state. Such reductions are treated as "appropriations" that may be included in a general appropriations bill and are subject to the Governor's line item veto. *Rios v. Symington*, 172 Ariz. 3, 10-11, 833 P.2d 20, 27-28 (1992). By today holding that § 47 cannot be included in a

general appropriations bill because it does not reduce any identifiable appropriation, the Court's decision not only honors the language of Article 4, Part 2, Section 20 of the constitution, but also promotes accountability and transparency in the state's budgeting process.

_____
W. Scott Bales, Justice


CONCURRING:


_____
Andrew D. Hurwitz, Justice