NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CAMMIE CARRETERO NKA, CAMMIE ROGERS,
*Petitioner/Appellant*,

*v.*

ROBERT CARRETERO,
*Respondent/Appellee.*

No. 1 CA-CV 24-0666 FC

FILED 07-31-2025

Appeal from the Superior Court in Yuma County
No. S1400DO201701560
The Honorable Nathaniel T. Sorenson, Judge

**AFFIRMED**

COUNSEL

Schneider & Onofry, PC, Phoenix
By Jon D. Schneider, Dee R. Giles
*Counsel for Petitioner/Appellant*

Cordell Law, LLP, Peoria
By Christopher R. Kennedy
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

---

**G A S S**, Judge:

¶1           Ex-wife appeals from the superior court's order granting ex-husband's petition to amend the income withholding order and request for credit for overpayment of spousal maintenance. The superior court found ex-husband's spousal maintenance obligation terminated when ex-wife remarried. The superior court then ordered ex-wife to repay ex-husband from the date of her remarriage.

¶2           Because ex-husband's spousal maintenance obligation ended as a matter of law upon wife's remarriage and because the superior court did not abuse its discretion when it found ex-wife's affirmative defense of laches failed, the court affirms.

## FACTUAL AND PROCEDURAL HISTORY

¶3           In November 2017, ex-wife petitioned to dissolve her marriage with ex-husband. In January 2018, the superior court granted ex-wife's petition and entered a default dissolution decree consistent with the petition. The decree ordered ex-husband to pay $1,500 in spousal maintenance on the first day of each month "until [ex-wife] remarries or either party is deceased," or until December 31, 2018.

¶4           On June 14, 2018, more than 6 months before spousal maintenance would have terminated of its own accord, ex-wife remarried. Three weeks later, on August 3, 2018, ex-husband learned ex-wife remarried and texted her an image of her new marriage license he found by reviewing public records. Throughout that day, the parties exchanged text messages in which ex-wife incorrectly said her remarriage did not affect spousal maintenance and ex-husband correctly said it did. On August 5, ex-husband texted ex-wife saying he would speak to a lawyer regarding this matter. Two days later, ex-husband texted ex-wife, "I'm filing a petition to stop alimony, and I'm taking you to court for the payments you received. . . . I'll see you in court in October." But ex-husband did not file a petition at that time.

¶5          Six months later, in February 2019, ex-wife petitioned to modify child support and parenting time because of her new husband's military reassignment to North Carolina. At that point, ex-husband's spousal maintenance obligations had ended. In August 2019, the superior court granted that petition and issued an amended income withholding order in September 2019, which included $1,500 per month for spousal maintenance. Ex-husband still took no action.

¶6          Four years later, in October 2023, ex-husband says he discovered he was still paying spousal maintenance when he applied for a loan to purchase a house with his new wife. Ex-husband's employer gave him a statement showing the amounts disbursed from March 30, 2018, to December 1, 2023 to ex-wife because of the income withholding order. Based on his employer's information, ex-husband alleged he overpaid spousal maintenance by $41,417.32.

¶7          Not until April 2024 did ex-husband petition to amend the September 2019 income withholding order and request credit for his overpayment of spousal maintenance. Ex-husband sought $41,417.32 for overpayment, in essence seeking civil restitution. As to the credit, ex-husband asked the superior court to give him credit for overpayments from July 1, 2018 and recalculate any arrearages or alternatively enter judgment in his favor for the overpayment. Ex-husband also sought prejudgment interest on any overpayment. The superior court stopped spousal maintenance withholdings pending a July 2024 hearing. Even so, ex-husband's employer continued withholding spousal maintenance.

¶8          Shortly before the July 2024 hearing, ex-wife's counsel filed a notice of appearance. Both parties filed pretrial statements. Ex-wife asserted a laches and waiver defense to ex-husband's restitution claim. The superior court held an evidentiary hearing in which it heard testimony from both parties. Ex-wife did not pursue a waiver defense, focusing her testimony and argument on her laches defense.

¶9          In July 2024, the superior court granted ex-husband's petition and found spousal maintenance terminated "effective June 30, 2018 based on [ex-wife's] remarriage." In ruling on ex-husband's petition, the superior court found ex-husband's spousal maintenance obligation terminated as a matter of law when ex-wife remarried in June 2018 and ex-husband was entitled to restitution for any spousal maintenance overpayments from that time. The superior court also found wife did not prove her laches defense. The superior court then ordered ex-wife to pay ex-husband $41,417.32 in overpaid spousal maintenance.

¶10 The court has jurisdiction over ex-wife's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. § 12-2101.A.1.

**ANALYSIS**

**I.     The superior court did not err when it found ex-husband was entitled to restitution for overpaying spousal maintenance.**

¶11 Ex-wife argues the superior court erred when it retroactively terminated spousal maintenance to the date of her remarriage instead of the date ex-husband filed petition. The superior court did not err.

¶12 This court addressed this issue more than 20 years ago. *See Diefenbach v. Holmberg*, 200 Ariz. 415, 417 ¶ 6 (App. 2001). *Diefenbach* ruled "termination" and "modification" are not synonymous under A.R.S. § 25-327.B. *Id*. Under section 25-327.B, spousal maintenance obligations terminate "upon the remarriage of the spouse receiving the payments unless the decree distinctly expresses, without the need of implication or inference, that the spousal maintenance will continue notwithstanding remarriage." *Palmer v. Palmer*, 217 Ariz. 67, 70 ¶ 10 (App. 2007).

¶13 Ex-husband's spousal maintenance obligation terminated by law once ex-wife remarried. In plain language, the decree said ex-wife would receive spousal maintenance just until she remarried, died, or December 31, 2018. And Ex-husband could state a claim for civil restitution as the most fitting remedy for his requested overpayment credit, but ex-husband did not identify the specific equitable basis for his civil restitution claim. And ex-wife did not challenge or object to ex-husband's request for overpayment credit based on his failure to identify the equitable basis.

¶14 "[T]o be granted restitution, [ex-husband] must demonstrate that [ex-wife] received a benefit, that by receipt of that benefit [ex-wife] was unjustly enriched at [ex-husband's] expense, and that the circumstances were such that in good conscience [ex-wife] should make compensation." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352 (App. 1982). But his claim is subject to equitable defenses, such as laches. The superior court as a factfinder is in the best position "to determine [the restitution sufficient] to make [an individual] whole" and to address any equitable defenses. *In re William L.*, 211 Ariz. 236, 239 ¶ 12 (App. 2005) (citation omitted); *see also Hamberlin v. State*, 249 Ariz. 31, 35–36 ¶ 24 (App. 2020) (the superior court's injunctive authority allows it to address equitable defenses).

**¶15**         Based on the evidence presented, the superior court found husband proved he was entitled to restitution of $41,417.32. The parties do not challenge that amount on appeal.

## II.    The superior court did not abuse its discretion when it found ex-wife did not prove her laches defense.

**¶16**         The court reviews a ruling on laches for abuse of discretion. *Rash v. Town of Mammoth*, 233 Ariz. 577, 583 ¶ 17 (App. 2013). "The court abuses its discretion if no substantial evidence in the record supports the court's conclusion." *Id.* The party asserting laches bears the burden of proving both (1) the other party's delay in asserting the claim was unreasonable under the circumstances, and (2) the unreasonable delay resulted in prejudice to the asserting party. *Id.* ¶¶ 17–18. Prejudice is demonstrated through injury or a change in position because of the delay. *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558 ¶ 6 (2009). Speculative or hypothetical harm cannot constitute prejudice. *See Cyprus Bagdad Copper Corp. v. Ariz. Dep't of Revenue*, 196 Ariz. 5, 9 ¶ 14 (App. 1999).

**¶17**         Regarding the second element of prejudice, the superior court found ex-husband's delay did not prejudice ex-wife because she spent the overpayments for her own enrichment. The court agrees.

**¶18**         The court first addresses a possible source of prejudice — the child support calculation. *See* A.R.S. § 25-320 app. ("Guidelines") § II.A.1.b. Spousal maintenance can affect the amount of the paying parent's child support obligation. *Id.* But ex-husband's delay appears to have had no prejudicial impact on child support. Though the withholding order included spousal maintenance, the child support worksheets used to calculate the later child support modification did not. *Id.* As such, ex-husband's delay did not reduce his child support obligation during that time.

**¶19**         Beyond that potential prejudice, ex-wife's sole argument was she spent the money and could not afford to pay it back. Ex-wife's testimony was brief, accounting for just 9 pages of the hearing transcript. Ex-wife testified to having earned a bachelor's degree in February 2024, to being unemployed at the time of the hearing, to trying to secure a real estate license, and to being unable to repay ex-husband as a result. But she attributed none of those circumstances to ex-husband's delay. Ex-wife's pre-trial statement said she spent all the money, but she did not testify about how she spent all the spousal maintenance payments or when she spent them. Even so, ex-wife argues she changed her position by spending

the money because of ex-husband's delay. In a somewhat ironic twist, ex-wife's argument turns in part on her saying she did not know she was receiving spousal maintenance payments for the same reasons ex-husband offers. And for the same reasons ex-husband's argument fails, ex-wife's does as well. At a minimum, both were aware of the spousal maintenance issues in August 2018. Both chose to take no action. And ex-wife cannot establish prejudice for that same reason.

**¶20** At best, ex-wife's evidence of prejudice is speculative. Even if the superior court had found ex-husband's delay was unreasonable, ex-wife could not prevail with the laches defense without actual prejudice. *See Harris v. Purcell*, 193 Ariz. 409, 412 ¶ 16 (1998) ("[E]ven a finding of unreasonable delay is not enough; it must also be established that the delay resulted in actual prejudice."). The superior court thus did not err when it found ex-wife did not prove the prejudice element of her laches defense. *See Cyprus Bagdad Copper Corp.*, 196 Ariz. at 9 ¶ 14.

**¶21** Both parties request attorney fees and costs. The court exercises its discretion under A.R.S. § 25-324.A and declines to award attorney fees and costs.

## CONCLUSION

**¶22** The court affirms the superior court's order confirming ex-husband's obligation to pay spousal maintenance ended upon ex-wife's remarriage and requiring ex-wife to repay overpaid spousal maintenance to ex-husband.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR